JUDGE SWEET

DE ORCHIS WIENER & PARTNERS, LLP
61 Broadway, 26ᵗʰ Floor
New York, New York  10006-2802
(212) 344-4700

*Attorneys for Plaintiff*
**ASPEN INFRASTRUCTURES LTD.**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
ASPEN INFRASTRUCTURES LTD., F/K/A
SUZLON INFRASTRUCTURE LTD.,

                                        Plaintiff,

        - against -

E.P. TEAM, INC.,

                                        Defendant.
-------------------------------------------------------------X



**07 CIV 8813**

**07 Civ.**

**VERIFIED COMPLAINT
AND RULE B ATTACHMENT**

        Plaintiff ASPEN INFRASTRUCTURES LTD., by its attorneys, DE ORCHIS WIENER &
PARTNERS, LLP., as and for its Verified Complaint against Defendant E.P. TEAM, INC.,
alleges upon information and belief, as follows:

        1.      This is an admiralty and maritime claim within the meaning of Rule 9(h) of the
Federal Rules of Civil Procedure and 28 U.S.C. § 1333.

        2.      Venue is proper in this district as defendant cannot be found within the district
and there is believed to be goods and chattels, or credits and effects in the hands of garnishees,
belonging to the defendant within the jurisdiction of the district as provided for by Supplemental
Admiralty Rule B of the Federal Rules of Civil Procedure.

*The Parties*

3.    At and during all times hereinafter mentioned, Plaintiff Aspen Infrastructures,

Ltd., (hereinafter "Aspen") was, and still is, a corporation organized and existing under and by

virtue of the laws of India, with a principal place of business located at 5th Floor, Godrej

Millenium, 9 Koregaon Park Road, Pune, 411-001, Maharaashtra, India.    Aspen, at all times

hereinafter mentioned, was engaged in lawful business, including the business of chartering

vessels and shipping cargo for profit in world wide trade.

4.    Upon information and belief, Defendant E.P. TEAM, INC., (hereinafter "EP

Team") is a corporation or other business entity incorporated under the laws of Delaware, with

an office and place of business located at 3700 Forums Drive, Suite 201, Flower Mound, Texas

75028. EP Team, at all times hereinafter mentioned, was engaged in the business of vessel

agency and/or management for ocean going vessels and/or logistics management and/or cargo

handling.

*As And For Its First Cause Of Action Against*
*Defendant EP Team, Plaintiff Aspen*
*Alleges Upon Information And Belief That:*

5.    Each and every one of the foregoing allegations is incorporated herein by

reference and reasserted as though fully set forth at length.

6.    Plaintiff Aspen, through its predecessor company, Suzlon Infrastructure

Limited, entered into a contract with defendant EP Team entitled "Sales and Logistics Services

Agreement" (hereinafter "Agreement"), dated April 9, 2006, by which EP Team was appointed

Aspen's general sales and port agent in the United States.    Under the terms of the Agreement,

EP Team was responsible to provide various services to vessels which Aspen had and was to

2

have under charter for the carriage of cargo to and from the United States, in international commerce. Specifically, EP Team was responsible to solicit cargo for Aspen controlled vessels, collect ocean freight, select assign and manage terminal facilities for Aspen controlled tonnage, arrange and manage stevedoring and heavy lift operations on behalf of Aspen at all United States ports as well as assume the responsibility for the loading and unloading of Aspen tonnage in the United States. *(Annexed hereto as Exhibit A is a copy of the Agreement).*

7.    Due to financial irregularities and for other good cause, Aspen terminated the Agreement with EP Team on July 5, 2007, said termination to be effective, by the terms of the Agreement on August 7, 2007.

8.    Following termination, the Agreement provided that the parties were obligated to continue their performance under the Agreement with respect to all vessels and/or cargo that were in transit prior to said termination. In addition, the parties were obligated to cooperate to ensure a smooth closing of accounts between the parties.

9.    In violation of its obligations under the Agreement, EP Team has failed to fully account for ocean freights which were collected on behalf of Aspen during the operation of the Agreement. EP Team has failed to account for these monies.

10.    In violation of its obligations under the Agreement and in contravention of specific instructions from Aspen, defendant EP Team collected ocean freights earned by vessels controlled by Aspen which were outside of the geographic scope of the Agreement. EP Team has failed to account for these monies.

11.    As a result of the breach of contract and breach of duty under the Agreement of defendant EP Team has wrongfully withheld US$908,516.40, in funds belonging to Aspen, as

near as can now be estimated. Said amount includes: a) the balance of ocean freights collected on behalf of Aspen under the Agreement but not accounted for; and b) ocean freights collected from Aspen's customers in violation of the Agreement.

### As And For Its Second Cause Of Action Against Defendant EP Team, Plaintiff Aspen Alleges Upon Information And Belief That:

12.     Each and every one of the foregoing allegations is incorporated herein by reference and reasserted as though fully set forth at length.

13.     Following termination of the Agreement, EP Team, in breach of its obligation under the Agreement, refused to provide the services or pay for services that were provided to the vessels under the control of Aspen. As a result of the actions by EP Team, Aspen has incurred liability to third party providers of services to vessels under its control.

14.     In violation of its obligations under the Agreement, defendant EP Team has failed to negotiate in good faith and/or to keep proper accounts of payments made on behalf of Aspen to third party service providers.

15.     In violation of its obligations under the Agreement, defendant EP Team has failed to make timely payments to third party service providers from the funds collected on behalf of Aspen, thus forcing Aspen to effect payment directly to said third party service providers and/or undertake to make payment to third party service providers which should have been paid by EP Team out of the funds belonging to Aspen which it is wrongfully holding.

*As And For Its Third Cause Of Action Against*
*Defendant EP Team, Plaintiff Aspen*
*Alleges Upon Information And Belief That:*

16.     Each and every one of the foregoing allegations is incorporated herein by reference and reasserted as though fully set forth at length.

17.     The Agreement between Aspen and EP Team contains a specific arbitration clause which provides that:

> If any dispute arises between the parties out of or in connection with the Agreement, whether in the nature of interpretation or meaning of any term hereof, or as to any claim by one against the other or otherwise, the same shall be referred to arbitration of a common arbitrator if agreed upon, or to arbitrators, one to be appointed by each party to the dispute, and the arbitration shall be governed by the Arbitration Act for the time being enforced. Unless the parties to the dispute mutually agree to the location of the arbitration, the arbitration shall be held in Singapore.

18.     Pursuant to the arbitration provision of the Agreement, Aspen gave notice to EP Team that it was demanding arbitration of the disputes under the Agreement and that it had appointed its arbitrator in Singapore. EP Team has refused to proceed to arbitration.

19.     In violation of its obligation under the Agreement, on August 6, 2007, defendant EP Team filed suit against Aspen in the United States District Court for the Southern District of Texas. *(Annexed hereto as Exhibit B is a copy of the Texas complaint).*

## APPLICATION FOR ISSUANCE
## OF A RULE B ATTACHMENT

20.     Each and every one of the foregoing allegations is incorporated herein by reference and reasserted as though fully set forth at length.

21.     The defendant cannot be found within this District within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of

Civil Procedure, but, upon information and belief, defendant has, or will have during the pendency of this action, assets within this District and subject to the jurisdiction of this Court, held in the hands of garnishees including, but not limited to ABN Amro Bank, HSBC (USA), Bank of America, Wachovia, Citibank, American Express Bank, J.P. Morgan Chase, Bank of New York, The Clearing House Interbank Payments System LLC, The New York Clearing House Association LLC, and/or Standard Chartered Bank, which are believed to be due and owing to the defendants.

22.    The Plaintiff seeks an Order from this Court directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, attaching any assets of the defendant held by the aforesaid garnishees for the purpose of obtaining personal jurisdiction over the defendant, and to secure and/or satisfy the plaintiff's claims as described above.

**WHEREFORE**, Plaintiff prays:

A.    That process in due form of law issue against the defendant, citing it to appear and answer under oath all and singular the matters alleged in the Complaint;

B.    That since the defendant cannot be found within this District pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, this Court issue an Order directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, attaching all tangible or intangible property in whatever form or any other funds held by any garnishee, including, but not limited to, ABN Amro Bank, HSBC (USA), Bank of America, Wachovia, Citibank, American Express Bank, J.P. Morgan Chase, Bank of New York, The Clearing House Interbank Payments System LLC, The New York Clearing House Association LLC, and/or Standard Chartered Bank, which are believed to be due and owing to the

defendant EP Team, Inc., in the amount of US$908,516.40 to satisfy and/or secure plaintiff's claims, and that all persons claiming any interest in the same be cited to appear and pursuant to Supplemental Admiralty Rule B to answer the matters alleged in the Complaint;

     C.    That this Court retain jurisdiction over this matter through the entry of any judgment or award associated with any of the claims currently pending, or which may be initiated in the future, including any appeals thereof; and

     D.    That the defendant be ordered to stay the pending legal action in the United States District Court for the Southern District of Texas and proceed to arbitrate its dispute with plaintiff in the contractually agreed upon forum of Singapore; and

     E.    That the plaintiff has such other, further and different relief as the Court may deem just and proper.

Dated:  New York, New York
        October 12, 2007

                      **DEORCHIS WIENER & PARTNERS, LLP**
                      *Attorneys for Plaintiff*
                      ASPEN INFRASTRUCTURES LTD

                      By:_____
                         John A. Orzel (JO-2420)
                         61 Broadway, 26th Floor
                         New York, New York  10006-2802
                         (212) 344-4700
                         Our File: 2064-2

## VERIFICATION

John A. Orzel declares and states that he is a partner in the law firm of DeOrchis, Wiener & Partners, LLP, attorneys for plaintiff in this action, and that the foregoing Verified Complaint is true to his knowledge, except as to matters therein stated on the information and belief and as to those matters, he believes them to be true; that the ground of his belief as to all matters not stated upon knowledge is information furnished to him to by Plaintiff; that the reason why the Verification is not made by plaintiff is that plaintiff is a corporation whose principal place of business is outside the New York County, and that due to the exigent nature of this proceeding it was not possible to obtain a Verification from plaintiff; and that he is authorized to so verify.

I declare and state under penalty of perjury that the foregoing is true and correct.

Executed on October 12, 2007

_____
John A. Orzel

# Exhibit A

To the Complaint of Plaintiff Aspen Infrastructures, Ltd.

## SALES AND LOGISTICS SERVICES AGREEMENT

THIS SALES AND LOGISTICS SERVICES AGREEMENT (THE "AGREEMENT") MADE as of this ___ TH day of April, 2006 by Suzlon Infrastructure Ltd., a company incorporated under the Companies Act 1956, India, having corporate offices at 9, Koregaon Park Road, Pune, 411 001, Maharashtra, India, (hereinafter referred to as "SIL" , which expression shall unless it be repugnant to the context or meaning thereof be deemed to mean and include its successors and assigns), and EP-Team, Inc. a corporation formed under the laws of the State of Nevada, USA, having an office at 320 Lake Trail Court, Double Oak, Texas 75077-8491, USA (hereinafter referred to as "EP-Team"), which expressions shall unless it be repugnant to the context or meaning thereof be deemed to mean and include its successors and assigns),

WHEREAS, SIL is in the business of undertaking contracts for supply chain management and has chartered vessels which would be trading worldwide.

WHEREAS, EP-Team is a logistics management organization that, inter alia, provides business development and management services to various logistics organizations;

WHEREAS, SIL seeks to utilize the services of EP-Team in support of its efforts to book space on its vessels .

NOW THEREFORE, in consideration of the premises, the parties agree as follows:

### 1. PRELIMINARY STATEMENT

**Time Chartering of Vessels**

SIL presently has the following ocean-going vessels for a specific period of time:

- Beluga Spirit, chartered
- Beluga Margaretha Green,

SIL anticipates to have more vessels under its control and such vessels would be covered under the present agreement as and when they would be added to the present list. In the event such additional vessels are chartered, such additional vessels will be subject to this agreement and this agreement will be supplemented with a list of such vessels, according to the provisions set forth hereinafter regarding supplements or changes to this Agreement.

**Planned Scope of Use of Charter Vessels**

SIL anticipates loading these vessels at various ports in India and worldwide. SIL will control the load planning of all vessels loading cargoes for destination in United States. These voyages shall be considered "inbound voyages".

SIL also requires port terminal facilitation, stevedoring, storage and other logistics management services at Houston upon arrival and discharge of its cargo.

### 2. APPOINTMENT OF EP-TEAM AS GENERAL SALES AND PORT SERVICES AGENT IN USA

SIL is appointing EP-Team as its sales agent to establish a sales and management operation to secure freight and associated revenue.



The parties acknowledge that EP-Team additionally has the ability to bring to SIL opportunities to add cargo to specific outbound voyages from India ports as a revenue enhancement to SIL. SIL agrees that EP-Team will be the sales agent for appropriate co-ordination for additional freight and revenue for voyages from United States. However, SIL has full discretion to accept or reject any incremental cargo opportunities brought to it by EP-Team for outbound voyages.

The parties further acknowledge that EP-Team has the ability to manage on SIL's behalf all of the various port and terminal handling operations at Houston and other ports of arrival for the outbound voyages. Therefore SIL is appointing EP-Team to be its agent for the appropriate selection, assignment and management of the terminal facilitation, stevedoring, and heavy lift operations as related to the discharge and further loading of SIL's vessels at USA ports and loading/discharge at intermediate or other destination ports, as may be specified and per service requirements as agreed by the various parties necessary to the sale of cargo space and disposition of such cargo on those vessels.

### 3. SERVICES

The EP-Team shall perform the work described or referred to in and required by the Statement of Work contained in Attachment A (the "Services/Fees") attached hereto and incorporated by reference as part of this Agreement.

### 4. PERIOD OF PERFORMANCE

The term of this agreement is for a period coextensive with the time chartering of vessels by SIL, subject to earlier termination as provided in this Agreement. Any extension of the term will require execution of a written agreement signed by both parties.

### 5. SUBCONTRACTS/ASSIGNMENTS

The EP-Team and SIL may assign this agreement, in whole or in part.

### 6. NOTICE OF DEFAULT

In the event that either party commits a breach of this agreement or otherwise is in breach of any of the obligations of this Agreement, the other party may notify the breaching party that it is in default of its obligations and request the party to remedy such breach. Such notification shall be in writing and to the individual listed below as notify party for that party. The breaching party shall have 90 days from date of notice in which to remedy such breach. Failure of a party not to notify a party in breach shall not operate as a waiver or estoppel of such breach.

### 7. TERMINATION

The parties shall have the right to terminate this arrangement by giving the other party 30 days notice of the same without stating any cause at any time during the currency of this agreement. On such termination both the parties shall continue to perform their duties for the shipment already underway and shall be bound by the terms of this agreement till such time the activity undertaken or initiated prior to termination is not competed in totality. The parties on such termination shall continue to co-operate with each other to ensure proper closure of accounts and completing all activities for the termination of the arrangement.

Upon completion of the procedure relating to Notice of Default, either party, may, for cause, terminate this Agreement and performance hereunder, in whole or, from time to time, in part by written notice of termination, which notice shall state the extent to which performance shall be terminated and the date upon which termination shall become effective.

2

As agreed:    *David R. Pulk*

Dated: April 9, 2006



Upon receipt of such notice, the party receiving such notice shall:

* Stop work on the date and to the extent set forth in such notice, and
* Take such further action regarding termination of the Services or the Agreement as the party seeking termination may reasonably direct.

## 8. PRICE AND PAYMENT

See Attachment A.

All taxes of every nature and kind, other than applicable sales taxes (if any) on EP-Team's services, that are applicable to amounts received by EP-Team from SIL, under the Agreement, shall be the responsibility of EP-Team and SIL shall have no obligation to EP-Team or to any taxing authority with respect to such taxes. EP-Team will indemnify and hold SIL harmless from any liability, costs, suits, attorney fees, or other costs of any kind resulting from claims by taxing authorities against SIL with respect to taxes which are the responsibility of EP-Team hereunder.

EP-Team agrees to keep and maintain books and records reflecting the revenues and calculations of gross revenue, vessel operating costs, net revenue and sales commissions, as further described in Attachment A, in accordance with sound accounting principles consistently applied. SIL shall have the right, upon at least ten (10) days advance written notice to EP-Team ("Audit Notice") and at SIL's sole expense, to audit EP-Team's books and records in order to verify such revenues, costs and calculations of fees. Any such audit shall be performed during EP-Team's normal business hours. EP-Team shall have the right to dispute the result of any such audit by SIL. EP-Team shall maintain such books and records for a period of at least three years from the date of the relevant transaction.

## 9. REPRESENTATIONS

The EP-Team represents, warrants and covenants to SIL that the EP-Team is not restricted in any way, by agreement or otherwise, from entering into this Agreement or performing the Services.

SIL represents, warrants and covenants to the EP-Team that SIL is not restricted in any way, by agreement or otherwise, from entering into this Agreement.

Notwithstanding the foregoing, the parties acknowledge that certain legal reviews are required to ensure legal and lawful operation of the intended service according to US Federal Maritime Commission regulations.

## 10. CONFIDENTIALITY

SIL and the EP-Team agree that the terms and conditions of this Agreement are confidential and the parties hereto agree not to disclose the terms of this Agreement to any third party (other than to their respective attorneys, accountants, advisors and affiliates) except (i) as may be required by law or by the order of a court of competent jurisdiction, (ii) where such information is or becomes publicly available through lawful means without breach of this Agreement, or (iii) with the prior written consent of the other party. However, the parties agree that disclosures by either party to entities who propose to purchase from such party (or its affiliates) or enter into a financing transaction with such party (or its affiliates) concerning property of SIL (or its affiliates), or who propose to become investors in such party (or its affiliates) will not violate the terms of this confidentiality provision.

## 11. COMPLIANCE WITH LAWS

Except as noted with respect to start-up costs relating to legal status of the vessel operations, the EP-

3

As agreed:    *David R. Pulk*

Dated: April 9, 2006



Team shall, at its own expense, comply with all laws, rules and regulations, and assume all liabilities or obligations imposed by such laws, rules and regulations, with respect to the EP-Team's performance hereunder.

SIL shall, at its own expense, comply with all laws, rules and regulations, and assume all liabilities or obligations imposed by such laws, rules and regulations, with respect to its status as charter party of the vessels and also as owner of the cargo on the outbound voyages.

## 12. INDEMNITY

Each party shall indemnify the other and its affiliates, partners, principals, representatives and employees from and against any and all liability, damages, losses, claims, demands, judgments, costs and expenses of every nature and kind, by reason of injury to or death of any person or damage to or destruction of property, to the extent arising out of the negligent acts or omissions or willful misconduct, of it and its employees, subcontractors or agents, if any, in performance under the Agreement. The provisions of this Section survive termination of the Agreement.

Neither party shall be responsible for any such losses, liabilities, claims, judgments, costs, demands, and expenses caused by the negligence and willful misconduct of the other party, its partners, principals, agents, representatives or employees. The provisions of this Section survive termination of the Agreement.

In the event litigation is filed against either party for which the other party may be responsible under this provision, notice shall be promptly given of such claim pursuant to the notice provisions of this Agreement.

## 13. APPLICABLE LAW

This agreement shall be construed and enforced in accordance with English Law .

## 14. ENTIRE AGREEMENT; SUPPLEMENTS AND MODIFICATIONS

This Agreement constitutes the entire understanding between the parties hereto with respect to the subject matter hereof and shall supersede all previous negotiations, commitments, understandings, and agreements.   The parties may make changes or supplements to this agreement; such changes or supplements shall be reduced to writing, executed by authorized individuals of the parties and copies of such writings attached to this Agreement.

## 15. ARBITRATION

If any dispute arises between the parties out of or in connection with the agreement whether in the nature of interpretation or meaning of any term hereof or as to any claim by one against the other, or otherwise, the same shall be referred to arbitration of a common arbitrator if agreed upon or to arbitrators one to be appointed by each party to the dispute and the arbitration shall be governed by the Arbitration Act for the time being in force. Unless the parties to the dispute mutually agree to the location of the arbitration, the arbitration shall be held in Singapore.

## 16. ATTORNEYS' FEES

In the event of any litigation occurring out of this Agreement, the prevailing party shall be entitled to recover from the other party its reasonable attorneys' fees in connection with such litigation.

4

As agreed:    *David R. Pulk*

Dated: April 9, 2006

## 17. MODIFICATIONS

Except as expressly provided herein, no modifications to this Agreement shall be valid unless made in writing and signed by the duly authorized representative of SIL and the EP-Team, and neither the acquiescence in any performance at variance to the provision of this Agreement nor the failure to exercise any right or enforce any obligation hereunder shall be deemed a modification of this agreement.

## 18. NOTICES

All notices or requests to be given under this Agreement and all other communications related to the Agreement shall be in writing and shall be deemed to have been duly given if personally delivered, sent by overnight courier or mailed, first class, by registered or certified mail return receipt requested, addressed as follows, and shall be effective when received:

For SIL:

Mr. Sanjeev Bangad
General Manager — Logistic
5th Floor · Godrej Millenium
9, Koregaon Park Road
Pune, 411-001
Maharashtra
India

For EP-Team

Mr. David Pulk
President
320 Lake Trail Court
Double Oak, Texas 75077-8491
USA

Either party may change such address, designation, or title of the individuals by written notice issued and delivered as above.

SIGNED by the parties to be effective as of the date first written above.

SUZLON INFRASTRUCTURE LTD.

By: _____

    Name: _____
    Title: _____

EP-TEAM, INC.

By:   *David R. Pulk*

Name:  David R. Pulk



greed:  *David R. Pulk*
Dated: April 9, 2006

ATTACHMENT A

### Legal Character of Service

It is the intent of the parties to represent in its sales that the actual services to be provided by the vessels is to be a non-liner service and further that there will be no specific tariff filings requisite to US Federal Maritime Commission requirements for vessel operating common carriers (VOCCs) or non-vessel operating common carriers (NVOCCs). The parties shall secure appropriate legal advice on how to structure its sales efforts and the charter operations to ensure such intended status.

### Start-up Costs for the Vessels

Costs associated with such legal advice on the structure of the vessel service and other costs relating to the vessels legal and regulatory status (such as laws and regulations of other countries) shall be borne by EP-Team

### Structure of Sales and Support Services

EP-Team will represent SIL in its efforts to develop freight for its voyages from United States.

The parties shall mutually develop standard operating and accounting procedures to manage the sales, operations and accounting processes prior to the sailing of the first voyage from United States. These shall include appropriate consideration for insurance coverage, requirements for bonds and certificates of financial responsibility.

EP-Team will provide dedicated sales and support staff in offices to be managed from a base of operations in Houston, Texas, based upon the capacity of the vessels and the anticipated trade lanes to be solicited for freight. Costs associated with this staff and any legal and regulatory obligations relating to such staff will be borne by EP-Team.

EP-Team anticipates additional support offices in Dallas, Texas (USA); Dubai, UAE; and Mumbai and Ahmedabad, India; as well as utilizing existing structures and sales organizational support in various global markets, (i.e., Seoul, Korea; Singapore; Paris, France; Hong Kong, S.A.R.; Amsterdam, Netherlands, etc.), and may open additional offices as required to maximize revenue to SIL for voyages from United States.

EP-Team shall target opportunities for the voyages from United States that will maintain SIL's 90 day round trip voyage sales order fulfillment planning schedule, unless otherwise waived by SIL due to significant revenue enhancement opportunities or otherwise.

EP-Team shall further coordinate with SIL on all opportunities for additional cargo for voyages from India.

EP-Team's focus for sales shall be in the following lanes:

Voyages from India:

- Space/cube as available on India-to-Houston trade lane

7

As agreed:   *David R. Pulk*
Dated: April 9, 2006



- By inducement to/from those points wherein outbound voyages will be routed from India ports to other points, including, but not limited to, China, Republic of Korea, etc.

Voyages from United States

- Houston to all ports in India
- Inducement calls USA-ports Gulf/East Coast to ports of call within acceptable deviation (time and cost) from otherwise empty return voyage to Kandla/Mumbai
- Inducement calls to Ports in the Mediterranean Sea
- Inducement calls to Ports in the Red Sea, Arabian Sea and Arabian Gulf Via Suez Canal
- Provide for authorized P2-level B/L per U.S.A.-government "USA-flag vessel" using legal transit (not cabotage vessel - primarily lighter/barge to Kuwait, Oman, Qatar, and Iraq ports via Dubai, UAE)
- "Cargo of opportunity" to ASPAC-ports (China, Korea, etc.) Via Panama Canal based on inducement

### Accounting

Booking of Cargo for Voyages from India and United States

EP-Team shall be responsible for invoicing all amounts to companies which booked cargo on the vessels. EP-Team shall give credit and terms of credit to such companies per industry standards using industry accepted credit checking practices with prior written consent of SIL.

EP-Team shall account for all revenue billed and received on a per vessel voyage basis. EP-Team shall provide weekly reports to SIL of all accounts payable and receivable issues. Amounts due from customers but not yet received as of the time of vessel net revenue accounting and payment, shall be accounted for, commissions determined and net amounts paid to SIL on a monthly basis.

### Compensation

Various types of costs (fixed and variable) associated with the operation of the various vessels shall be established and agreed upon by the parties based upon the contract in effect between SIL and the vessel owner, or otherwise established at time of vessel voyage.

For actual costs assessed by third parties for such delay, diversion or otherwise due to the additional freight on the voyage, the parties shall agree upon who shall be responsible for payment of such costs. If SIL is the responsible party, it shall provide relevant cost information to EP-Team for further revenue accounting of the vessel voyage. This agreement shall be incorporated within the mutual standard procedures to be developed by the parties.

30 days after completion of each vessel voyage, EP-Team shall account for all revenue billed and received from customers (gross revenue) and compute net revenue based upon all costs associated with delay, diversion or carriage of non-SIL freight on the voyage. Net Vessel Voyage Revenue shall be Gross Revenue achieved per vessel less Vessel Operating Costs (those costs associated with inducement/delay, diversion and additional freight) including but not limited to, port fees, terminal/stevedoring, transit fees (Suez Canal), additional days of charter ("day rate" and bunker assessments). Details relating to these processes shall be incorporated in the standard procedures to be developed by the parties.

8

As agreed: *David R. Pulk*

Dated: April 9, 2006



Net Vessel Voyage Revenue shall then be apportioned between SIL and EP-Team according to the following formula which shall be reviewed every six months and mutually agreed upon by the parties to be in line with the market trends. EP-Team shall remit the net revenue split due to SIL at that time.

EP-Team agrees that the cargoes that shall be booked by SIL for voyages from United States through their own contacts and in which EP-Team has no role to play, for such shipments the revenue will not be shared by SIL with EP-Team as would be agreed below, however they shall be paid 2% of net revenue earned as services charges for the services provided by EP-Team to SIL or its clients.

The details of the compensation, (commission on sales) schedule is listed below by example. The commissions are based on cumulative revenues attained, (i.e.; first dollar sales accrued from net revenue per vessel at the level noted).

| NET REVENUE per VESSEL (from and up to) | Incremental Commission to EP-TEAM for sales | | |
|---|---|---|---|
| $    700,000 | 8.0% | | |
| $  1,000,000 | 10.0% | | |
| $  1,250,000 | 12.5% | | |
| $  1,500,000 | 15.0% | | |
| $  2,000,000 | 17.5% | | |
| $  2,500,000 | 20.0% | | |

COMMISSIONS are based on NET REVENUE per VESSEL as defined in the AGREEMENT. Sales commissions are to be paid to EP-TEAM based on total cumulative revenues from US$1-base sales as calculated from NET REVENUE per VESSEL.

Port Handling and other Charges for Origin/Destination Services on Cargo Loaded on Vessels

EP-Team shall be responsible for securing all services required by SIL for efficient and effective offloading/loading of cargo as well as storage and beyond transportation. EP-Team shall further manage the pricing, invoicing, processing and payment for such services and in turn invoice SIL for such services. Prior to commencement of any such service, EP-Team shall provide to SIL all rate sheets, terms and conditions, tariffs and other relevant sources upon which its invoices are to be based and the same shall be approved by SIL before invoicing takes place. The intent of this process is to ensure that EP-Team is paid by SIL within the credit terms extended to EP-Team by the actual service providers.



9

As agreed:     *David R. Pulk*
Dated: April 9, 2006

# Exhibit B

**To the Complaint of Plaintiff Aspen Infrastructures, Ltd.**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

United States Courts
Southern District of Texas
FILED

AUG 0 6 2007

Michael N. Milby, Clerk of Court

| | |
|---|---|
| EP-TEAM, INC. and PROSHIPLINE, INC. | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) ) |
| ASPEN INFRASTRUCURE, LTD. f/k/a SUZLON INFRASTRUCTURE, LTD, | ) ) ) |
| Defendant. | ) ) ) |

Case No. **H-07 -2549**

### PLAINTIFFS' ORIGINAL COMPLAINT
### AND REQUEST FOR DECLARATORY RELIEF

Plaintiffs EP-Team, Inc. and ProShipLine, Inc. submit this request for declaratory relief
and show as follows:

### A. PARTIES

1.    Plaintiff EP-Team, Inc. ("EP-Team") is a corporation organized under the laws of
the State of Delaware, with its principal place of business in Houston, Texas. Plaintiff
ProShipLine, Inc. ("ProShipLine") is a corporation organized under the laws of the State of
Delaware, with its principal place of business in Houston, Texas. EP-Team and ProShipLine are
at times referred to collectively herein as "Plaintiffs."

2.    Defendant Aspen Infrastructure, Ltd. f/k/a Suzlon Infrastructure, Ltd. ("Aspen" or
"Defendant"), is a corporation organized under the laws of India, with its principal place of
business in Pune, India.  Defendant does not maintain a registered agent in the State of Texas.
Under the laws of the State of Texas, Defendant may be served by serving the Texas Secretary of
State.

PLAINTIFFS' ORIGINAL COMPLAINT AND REQUEST FOR DECLARATORY RELIEF    PAGE 1

## B. JURISDICTION

3.      The Court has diversity jurisdiction over this lawsuit pursuant to 28 U.S.C. §1332(a)(2) because the suit is between citizens of Texas, and a citizen of India, and the amount in controversy exceeds $75,000, excluding interest and costs.

## C. VENUE

4.      Venue is proper in this district pursuant to 28 U.S.C. §1391(a)(3) because defendant Aspen is subject to personal jurisdiction in this district and there is no other district where the action may be brought.

## D. FACTUAL BACKGROUND

5.      EP-Team is a United States company with its principal place of business in Houston, Texas. It is a logistics management organization that provides business development and management services to various companies.

6.      Aspen is an Indian corporation that is involved in the shipment of machinery to the United States on vessels which it has chartered. It is the successor corporation of Suzlon Infrastructure, Ltd., ("Suzlon") which was also an Indian corporation. Suzlon time chartered several ships in order to deliver freight from an affiliated company in India to the United States.

7.      On April 19, 2006, EP-Team and Suzlon entered into a Sales and Logistics Services Agreement, (the "Contract") whereby Suzlon appointed EP-Team as its exclusive United States sales agent to establish a sales and management operation to secure freight and associated revenue on the ships that Suzlon had chartered for the return voyages from the United States to India.

8.      Pursuant to the terms of the contract, EP-Team was the exclusive agent for the appropriate selection, assignment, and management of the terminal facilitation, stevedoring and

heavy lift operations related to the discharge and loading of Suzlon's vessels at U.S.A. ports and loading and discharge at intermediate or other destination ports.

9. As part of its responsibilities under the Contract, EP-Team agreed to keep and maintain books and records reflecting revenues and calculations of gross revenue, vessel operating costs, net revenue and sales commission. EP-Team maintains a bank account into which it places funds received from the shipping customers and from which expenses, commissions and other expenses are paid ("the Account").

10. The Contract specifically provides that the rights and duties of the parties are assignable, in whole or in part by either of the parties. Pursuant to this clause EP-Team, with the knowledge and agreement of Suzlon, assigned its rights and duties under the Contract to ProShipLine. As set forth above, Suzlon was reorganized as defendant Aspen.

11. The Contract provides that it is to be construed and enforced in accordance with "English Law". The contract further provides for arbitration as follows:

### "15.   ARBITRATION.

If any dispute arises between the parties out of or in connection with the Agreement, whether in the nature of interpretation or meaning of any term hereof, or as to any claim by one against the other or otherwise, the same shall be referred to arbitration of a common arbitrator if agreed upon, or to arbitrators, one to be appointed by each party to the dispute, and the arbitration shall be governed by the Arbitration Act for the time being enforced. Unless the parties to the dispute mutually agree to the location of the arbitration, the arbitration shall be held in Singapore."

12. On November 10, 2006, the parties, through a written addendum, modified the contract termination provisions to read as follows:

### "7.   Termination

A party shall have the right to terminate this arrangement by giving the other party 30 days notice of the same at any time during the currency of this agreement only in the following cases:

- Where a serious breach of contract by a party has been notified to the party by the other party and where within 30 days of such notification no action plan has been set forth by the party to the other party to mitigate the breach then the other party may choose to terminate the contract.

- Where a party has committed an act of willful negligence causing material loss to the other party in performing its obligations under this agreement and where within 30 days of such act no action plan has been set forth by the party to the other party to mitigate the loss then the other party may choose to terminate the contract.

- Where a notice of default has been served and the procedure dealing with such notice has been followed and no party in breach has failed to remedy the breach then the other party may terminate the contract.

On such termination both the parties shall continue to perform their duties for the shipments already underway and shall be bound by the terms of this agreement till such time the activity undertaken or initiated prior to termination is not completed in totality.

The parties on such termination shall continue to cooperate with each other to ensure proper closure of accounts and completing all activities for the termination of the arrangement.

Upon receipt of such notice, the party receiving such notice shall:

Stop work on the date and to the extent set forth in such notice; and

- Take such further action regarding termination of the services or the Agreement as the party seeking termination may reasonably direct."

13.    As of July 14, 2007, there were five vessels under charter contract for which ProShipLine was providing services to Aspen.

14.    From the beginning of the Contract until the present time, ProShipLine has complied in all respects with its contractual obligations to Aspen. ProShipLine has not committed a breach of the Contract nor has it committed any act of willful negligence.

15.    By virtue of a letter dated May 18, 2006, Aspen categorically reiterated that Pro Ship Line was the exclusive United States agent of Aspen to negotiate, accept freight or cargo onto its ships.

16.     On July 5, 2007, Aspen, by and through its General Manager for Logistics, Mr. Sanjeev Bangad, sent an e-mail to ProShipLine, which stated in part as follows:

"In continuation of the message below, please note that from 1st August '07, the owners [Aspen] will have alternate agreements in place and thus ProShipLine will cease to be our agents.

This serves as required notice."

17.     Aspen's purported termination of the Contract without cause on the part of either EP-Team or ProShipLine is a breach of the Contract. Furthermore, the unjustifiable breach by Aspen of the Contract and the ostensible revocation of ProShipLine's agency to complete its responsibilities for ships in transit pursuant to the terms of the Contract have created confusion and present the possibility of damages to be incurred by EP-Team and/or ProShipLine.

18.     A justiciable controversy has arisen between EP-Team/ProShipLine and Aspen pertaining to the terms and termination of the Contract. Contractual provisions pertaining to the application of English Law and the arbitration clause are ambiguous in that they are not specific in specifying what is defined by the term "English Law" nor what is meant by the term "Arbitration Act".

19.     As of August 6, 2007, one of the ships for which ProShipLine was providing services to Suzlon was scheduled to dock at the Port of Houston. Another of the ships is expected to dock in Houston within the week.

20.     As a result of the wrongful actions of Aspen, ProShipLine and EP-Team will suffer damages for which they are entitled to seek restitution.

21.     Upon information and belief, Aspen has no assets in the United States from which Plaintiffs would be able to seek the payment of a future judgment other than the Account which ProShipLine manages on behalf of Aspen.

## E. REQUEST FOR DECLARATORY RELIEF

22.    Pursuant to 28 U.S.C. §§ 2201 – 2202 and Fed. R. Civ. P. 57, EP-Team requests a declaration from the Court:

- Clarifying the law to be applied to the construction and enforcement of the rights of the Plaintiffs and Defendant pursuant to the Contract;

- Specifying the forum for the arbitration of the dispute between the Plaintiffs and Defendant;

- Ordering the payment of the funds in the Account to the registry of the Court pending the resolution of the dispute between the parties by arbitration or otherwise.

WHEREFORE, Plaintiffs EP-Team, Inc. and ProShipLine, Inc. respectfully request that Aspen Infrastructure, Ltd. be duly cited in terms of the law to appear and answer herein, and that upon final trial hereof, Plaintiffs have judgment against said Defendant as follows:

1.    A declaratory judgment of this Court as requested herein;

2.    On final trial, the Plaintiffs have and recover from Defendant Aspen the Plaintiffs' expenses incurred, including reasonable attorney's fees;

3.    All costs of court be taxed against the Defendant;

4.    The Plaintiffs have such other and further relief to which the Plaintiffs may be justly entitled.

Respectfully submitted,

Mark W. Romney
Attorney-in-Charge
Texas Bar No. 17225750

PLAINTIFFS' ORIGINAL COMPLAINT AND REQUEST FOR DECLARATORY RELIEF    PAGE 6

SD Texas Bar No. 208180
SHANNON GRACEY RATLIFF & MILLER, LLP
500 N. Akard Street, Suite 2500
Dallas TX 75201
Telephone: 214.245.3090
Facsimile: 214.245.3097
mromney@shannongracey.com

Andrew Schreck
Texas Bar No. 17813250
SD Texas Bar No. 12929
SHANNON GRACEY RATLIFF & MILLER, LLP
1301 McKinney St., Suite 2920
Houston, TX 77010
Telephone: 713.255.4700
Facsimile: 713.655.1597
aschreck@shannongracey.com

**ATTORNEYS FOR PLAINTIFFS**