HILL RIVKINS & HAYDEN LLP
*Attorneys for Defendant*
45 Broadway, Suite 1500
New York, New York 10006
Tel: (212) 669-0600
Fax: (212) 669-0699

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| ASPEN INFRASTRUCTURES LTD., F/K/A SUZLON INFRASTRUCTURE LTD., | : <br> : Index No.: 07 CIV 8813(RWS) |
| Plaintiff, | : |
| vs. | : |
| E.P. TEAM, INC., | : |
| Defendant. | : |

---

## MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF DEFENDANT EP-TEAM, INC., TO VACATE CERTAIN RULE B ATTACHMENTS

### PRELIMINARY STATEMENT

Defendant, EP-Team, Inc., ("EP") submits this memorandum in support of its motion pursuant to Rule E(4)(f) of the Supplemental Admiralty Rules of the Federal Rule of Civil Procedure. EP seeks to vacate the Order of Maritime Attachment in this case, and to vacate the attachment of funds obtained through service of Process of Maritime Attachment and Garnishment upon certain banks acting as garnishees in this district. Plaintiff Aspen Infrastructures Ltd. ("Aspen") commenced this action on or about October 12, 2007, by filing a summons and complaint, with a prayer for an order of attachment and issuance by the clerk of Process of Maritime Attachment and Garnishment ("PMAG"). The Court issued the order of

attachment and authorized the issuance of the PMAG on that date. Aspen served the PMAG on various garnishee banks in this district, and asserts that it has restrained several sets of funds totaling $ 152,744.98, as follows:

| | | |
|---|---|---|
| October 24, 2007: | JP Morgan Chase Bank | $ 19,611.42 |
| November 12, 2007: | JP Morgan Chase Bank | $ 6,098.56 |
| November 19, 2007: | JP Morgan Chase Bank | $ 12,035.00 |
| February 27, 2008: | Wachovia Bank | $100,000.00 |
| February 29, 2008: | JP Morgan Chase Bank | $ 15,000.00. |

Sullivan Decl. Exh. D.

For the following reasons, this Court should properly vacate each of these purported attachments and vacate its prior order authorizing the service of the PMAG in this action.

## FACTS

The claims underlying this litigation have already been before the Court, in connection with a related case entitled *ProShipLine, Inc. v. Aspen Infrastructures, Inc.*, Civil Action No. 07-10969 (RWS). By way of summary[1], the case arises from a Services Agreement originally entered into by Suzlon Infrastructure Ltd. and EP. Under the Services Agreement, EP was to provide various agency services for a fleet of vessels Suzlon was to have under time charter. Thereafter, Suzlon stated that it had reorganized as Aspen, while EP maintains that it assigned, with Aspen's knowledge and consent, all of its rights and duties under the Services Agreement to ProShipLine ("PSL"), a separate corporation with whom it is affiliated.

---

[1] The summary of facts is based largely on the Court's Opinion of February 1, 2008, in the *ProShipLine* case, attached as Exhibit E to the accompanying Declaration of John J. Sullivan. Except insofar as the Court's decision appears to credit Aspen's factual assertions as to how the commercial relationship among the parties deteriorated, for purposes of this motion EP accepts the facts as summarized by the Court in the February 1, 2008, Opinion.

On July 5, 2007, Aspen purported to terminate the agreement by writing to PSL in pertinent part as follows: "…please note that from 1st August '07, the owners [Aspen] will have alternate arrangements in place and thus ProShipLine will cease to be our agents…This serves as required notice." Without being possessed of cause on either the part of PSL or its assignor EP-Team, Aspen breached the Services Agreement of the contract by declaring termination. As a direct result of the wrongful actions of Aspen, PSL has asserted a claim for damages against Aspen, including lost revenue, interest, costs, and recoverable attorneys' fees. The Services Agreement also provided for arbitration of all disputes thereunder in Singapore.

In accordance with that agreement, PSL and EP-Team filed a declaratory judgment action in the Southern District of Texas, seeking, *inter alia*, a determination of which parties were obligated to arbitrate. Following Aspen's filing of the instant action and its attempt to obtain security via Rule B, in November 2007, EP-Team and PSL filed Rule B actions in the Southern District of Texas (Galveston Division) and the Western District of Washington, seeking attachments of bunkers and other supplies on board vessels Aspen had time chartered. As Aspen has not sued PSL in this action, PSL filed its own Rule B action in this Court on or about December 3, 2007.

Shortly after the filing of PSL's complaint in this action, the case filed by EP-Team and PSL in the Southern District of Texas (Galveston Division) came before the magistrate judge for a hearing regarding whether Aspen was "present" for Rule B purposes in the Southern District of Texas. According to the magistrate judge's opinion, Aspen offered the testimony of a witness from General Maritime Agency, Inc. ("GenMar"), a company purported to be an agent of Aspen in Texas. Aspen argued and the magistrate judge found that Aspen was present in Texas only through its relationship with GenMar, whom the magistrate found to be a managing agent. The

magistrate judge acknowledged that GenMar had not been authorized to accept service of process on behalf of Aspen. Nevertheless, the magistrate judge concluded that Aspen was present in the Southern District of Texas and vacated its order of attachment against certain property of Aspen then laden on board a particular vessel in port in Galveston.

Based in large part on the findings of the magistrate judge in Galveston, this Court on February 1, 2008, granted Aspen's motion to vacate the attachments PSL had obtained. This Court relied on the Court of Appeals decision in Aqua Stoli Shipping Ltd. v. Gardner Smith Pty., Ltd., 460 F.3d 434 (2005), which held that a district court may vacate an otherwise valid attachment if the defendant can be found in a more convenient district. This Court concluded that because both Aspen and PSL were present in the Southern District of Texas, that district was a more convenient district and ordered the attachments vacated. Although PSL has appealed this decision to the Court of Appeals, the attachments of Aspen's funds have been released and the funds under attachment have presumably left the district.

Although the prior decisions of this Court and the Galveston court made no findings regarding EP's presence in the Southern District of Texas, EP has nevertheless been present there since before the underlying dispute among the parties arose. EP has maintained an office in Houston since February 2007, with two full-time employees. EP originally sub-leased office space from GenMar, Aspen's own purported agent in Texas. Thereafter, EP moved into its permanent space at 3340B Greens Road, Suite 670, Houston, Texas, adjacent to space occupied by PSL. EP's office is manned by Mr. Brian Kevin Rottinghaus, EP's Director of Strategic Operations, as well as Mr. Mark Michaels. Mr. Rottinghaus is employed full time in the Houston office, other than when he is traveling on business. In addition, EP's head office is located in Flower Mound, Texas, which is near Dallas.

## ARGUMENT

### THIS COURT SHOULD EXERCISE ITS DISCRETION TO VACATE ASPEN'S ATTACHMENTS AS BOTH PARTIES ARE PRESENT IN THE SOUTHERN DISTRICT OF TEXAS

Because EP is present in the Southern District of Texas, and because Aspen is judicially estopped from denying that it is also present there, this Court should vacate the attachments against EP in this case. The Court of Appeals in Aqua Stoli Shipping Ltd. v. Gardner Smith Pty., Ltd., 460 F.3d 434, 444-45 (2005), held that a district court may properly exercise its discretion to vacate a Rule B attachment where the plaintiff could have brought its action in a more convenient district, such as where the plaintiff and defendant are both present. In light of this Court's decision in the companion case brought by PSL to vacate of Rule B attachments against Aspen on the very same grounds, the sound exercise of discretion virtually compels that this Court also vacate Aspen's attachments against EP.

As set out in the accompanying Declaration of Brian Kevin Rottinghaus, EP has had a permanent office with full time employees in the Southern District of Texas since February 2007. (Rottinghaus Decl. ¶ 2). Originally, EP subleased office space in Houston from GenMar, (Rottinghaus Decl. ¶ 2), the very agent that Aspen has claimed establishes its own presence in the Southern District of Texas. Thereafter, in June 2007, EP moved into its current offices located at Suite 670, 3340B Greens Road, in Houston. (Rottinghaus Decl. ¶ 3). EP subleases its space from PSL, who occupies the adjacent Suite 690. (Rottinghaus Decl. ¶ 5) Although a subtenant of its affiliate, the building's management has recognized that EP validly occupies office space in the building, and has assigned EP a separate suite number and its own mailbox at the building. (Rottinghaus Decl. ¶ 7; Exh. C). In addition, EP has two full time employees working out of the Houston office, including Mr. Rottinghaus, the company's Director of

Strategic Operations. (Rottinghaus Decl. ¶ 4, 6). There can be no question, therefore, that EP is present in the Southern District of Texas.

Aspen is judicially estoppel from claiming that it is not present in the Southern District of Texas. A litigant will be judicially estopped from asserting a particular argument where it has successfully argued an inconsistent position in a prior proceeding. Briarpatch Ltd. L.P. v. Geisler Roberdeau, Inc., 2007 WL 1040809, at *15-16 (S.D.N.Y. 2007). As this Court has stated, judicial estoppel applies when (1) the party against whom estoppel is asserted has argued an inconsistent position in a prior proceeding; (2) the prior inconsistent position was adopted by the court in some manner; and (3) the party against whom estoppel is asserted would derive an unfair advantage or impose an unfair detriment on the opposite party if not estopped. Id. at *15.

Any argument Aspen might make that it is not present in the Southern District of Texas certainly satisfies each of the three requirements. First, Aspen has already argued to this Court in the PSL case, to the magistrate judge in Galveston, and to the court in the Western District of Washington that its presence in the Southern District of Texas, by way of GenMar, precludes any Rule B attachments against it. Second, Aspen's argument has been accepted by all three courts, resulting in the vacatur of attachments in each jurisdiction. Third, Aspen would gain an unfair advantage if it could maintain Rule B attachments against EP in New York while claiming immunity from such attachments by EP or PSL.

The Court of Appeals in Bates v. Long Island R.R. Co., 997 F.2d 1028 (2d Cir. 1993), laid out the rationale for the application of the doctrine of judicial estoppel:

> judicial estoppel protects the sanctity of the oath and the integrity of the judicial process. Thus, there are two distinct objectives behind judicial estoppel, both of which seek to protect the judicial system. First, the doctrine seeks to preserve the sanctity of the oath by demanding absolute truth and consistency in all sworn positions. Preserving the sanctity of the oath prevents the perpetuation of untruths which damage public

> confidence in the integrity of the judicial system. Second, the doctrine
> seeks to protect judicial integrity by avoiding the risk of inconsistent
> results in two proceedings.

Id. at 1037-38. Both concerns expressed by the Court of Appeals are present in this case. First, the sanctity of the oath obligates Aspen to offer the same testimony in this action that it offered in Galveston. Second, inconsistent outcomes in multiple proceedings would impair the integrity of the judicial system by allowing Aspen to profit from misconduct.

Because both parties are present in the Southern District of Texas, this Court certainly has the discretion under Aqua Stoli to vacate the attachments against EP. Moreover, vacatur is particularly warranted in this case where Aspen has already used its presence in Texas to shield itself from attachments sought by EP and PSL, EP's affiliate and assignee. Finally, the allegations of Aspen's own complaint confirm that the locus of its claim is the Southern District of Texas. Aspen acknowledged in its Amended Complaint that EP and PSL had commenced an action in the Southern District of Texas, a district in which it shortly thereafter asserted it was present. When seeking its own Rule B attachment, however, Aspen made no allegations that it was present in that district, as such an allegation could have seriously affected its ability to obtain an attachment in New York.

## CONCLUSION

For the foregoing reasons, allowing Aspen's attachments to remain in place despite its own claims, which have been judicially endorsed, that it is present in the Southern District of Texas, would represent a miscarriage of justice. This Court has

already vacated an attachment against Aspen based on its presence in that district. Permitting the continuation of such an attachment by Aspen against another company that has a permanent office in the same district, while allowing Aspen to avoid the same exposure, would grant Aspen an unfair advantage that the Court should not sanction. Accordingly, EP's motion to vacate the attachments should be granted.

Respectfully submitted,

Dated: New York, New York
       April 30, 2008

HILL RIVKINS & HAYDEN LLP
Attorneys for Defendant, E.P. Team, Inc.

By: _____
    John J. Sullivan
    45 Broadway, Suite 1500
    New York, New York 10006
    (212) 669-0600