UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------X
ASPEN INFRASTRUCTURE LTD., F/K/A
SUZLON INFRASTRUCTURE LTD.,

                             Plaintiff,

        - against -

E.P. TEAM, INC.,

                           Defendant.
--------------------------------------------------------------X

**07 Civ. 8813 (RWS)**

## MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO VACATE PROCESS OF MARITIME ATTACHMENT

DE ORCHIS & PARTNERS, LLP.
61 Broadway, Suite 2600
New York, New York 10006
(212) 344-4700

*Attorneys for Plaintiff*
**ASPEN INFRASTRUCTURES, LTD.**

John A. Orzel
*- of Counsel -*

## TABLE OF CONTENTS

**INTRODUCTION**   ……………………………………………………...………... 1

**STATEMENT OF FACTS**  ……………………………………………...………... 2

    *SINGAPORE DEVELOPMENTS* ……………………………………….…………. 3

    *THE THREE PUPPETEERS* …………………………………………………….5

        *Jessie Baiza*   ……………………………………………………… 5

        *Neil Johnson* ………………………………………………………… 6

        *David Pulk (The Master Puppeteer)* ……………………………………… 6

    *THE PRESENT MOTION* ……………………………………………………... 8

**LEGAL ARGUMENT**

**POINT I**

**THE EVIDENCE DOES NOT**
**SUPPORT A FINDING THAT**
**EP-TEAM IS PRESENT IN**
**THE SOUTHERN DISTRICT OF TEXAS** …………………………………………..11

**POINT II**

**THE COURT HAS DISCRETION**
**TO MAINTAIN THE ATTACHMENT** ……………………………………........ 12

**CONCLUSION** ……………………………………………………………………….. 15

## INTRODUCTION

Plaintiff Aspen Infrastructures, Ltd.,[1] submits this Memorandum of Law in Opposition to the defendant EP-Team, Inc.'s motion to vacate a process of maritime attachment and garnishment pursuant to Supplemental Admiralty Rule E (4)(f). To date, Aspen has succeeded in restraining US$170,552.32 which, as far as Aspen has been able to determine, represents the only asset that EP-Team has.

It is Aspen's position that EP-Team has not shown that it not present within the jurisdiction of the United States District Court for the Southern District of Texas, as will be shown by the accompanying declarations. Just as important, however, is the fact that EP-Team's present motion is premised upon the finding of the Southern District of Texas which held that Aspen is jurisdictionally present within the Southern District of Texas. EP-Team is currently attempting to re-litigate this issue in the Southern District of Texas and has appealed the finding of this Court, on this issue to the Second Circuit.[2]

The present Rule B attachment proceeding was instituted in furtherance of an on-going arbitration between Aspen and EP-Team. Among the damages being sought by Aspen in that arbitration proceeding is the ocean freights in the amount of US$908,516.40 which EP-Team and/or its associated company ProShipLine, Inc., collected on behalf of Aspen. *See Amended Verified Complaint at ¶ 11.* In an affidavit sworn to under penalty of perjury filed by EP-Team and ProShipLine in connection with the Rule B litigation filed in the Southern District of Texas,

---

[1] Aspen Infrastructures, Ltd., was formerly known as Suzlon Infrastructure, Ltd. Aspen has subsequently changed its name back to Suzlon Infrastructure, Ltd. To avoid confusion and for the sake of continuity with the pleadings and other documents filed in the companion case, *ProShipLine, Inc., v. Aspen*, 07 Civ. 10969 (RWS), we will continue to use the Aspen name.

[2] EP-Team and ProShipLine have also appealed the decision vacating their attachment in the Western District of Washington to the Ninth Circuit Court of Appeals. To date the only indication as to the issues on appeal is an appeal statement citing the erroneous order vacating the attachment. It can only be assumed that the issue of Aspen's presence in the S.D.Tx. will also come up in that appeal. EP-Team has indicated as much in the attachment proceedings in the S.D.Tx.

Jesus Baiza admits that the "ProShip impress account …has a balance of approximately $699,000." *See Orzel Decl. at ¶ 12 and Exhibit P.* To date, EP-Team/ ProShipLine have refused to turn over those funds to Aspen, or to allow an audit of the records associated with the impress account, despite repeated request. *See KM Decl. at ¶5 - ¶8.*

The US$170,552.32 that is being held pursuant to this Court's Order of Attachment and process of maritime attachment and garnishment represents the only security which Aspen has against the US$908,516.40 wrongfully collected, withheld and/or disbursed and/or other claims that it is asserting. It is only right and proper that the Court exercise its discretion to keep this attachment in place and maintain the *status quo*.

## STATEMENT OF FACTS

During the course of the dispute between Aspen and EP-Team and its associated company, ProShipLine, Inc., (referred to hereinafter individually as "EPT" and "PSL" and referred to collectively as "EPT/PSL") it has become increasingly clear to Aspen that the principals who control both companies were using the two companies to try to confuse the issue of who was doing what and who was controlling the money that was passing through their control from ocean freights that were being collected on behalf of Aspen. Based upon public records obtained by Aspen and upon the statements made and/or sworn to by EPT/PSL personnel, it is abundantly clear that the principals were playing a "shell game" on Aspen.

The Court granted Aspen's request for an Order of Maritime Attachment on October 12, 2007. The Order was served upon a number of garnishee banks located within the jurisdiction of the Southern District of New York. The first restraint of an electronic fund transfer occurred on October 24, 2007. *See Sullivan Decl., Exhibit D.* On February 27, 2008, a single transfer in the

2

amount of US$100,000.00 was restrained.  By February 29, 2008, US$152,744.98 had been restrained.  Yet, EPT took no steps to have the attachment vacated until April 30, 2008.

The reason for the extraordinary delay in seeking to have the attachment vacated may lie in what has been occurring in the other two Federal District Courts where EPT/PSL have filed law suits relating to this matter and perhaps more importantly, what is occurring within the context of the Singapore arbitration by Aspen against EPT.  On February 1, 2008, this Court rendered its Opinion vacating the attachment of PSL in the companion case.  On February 19, 2008, Judge Rosenthal of the Southern District of Texas issued a Memorandum and Order overruling EPT/PSL's objection to the December 18, 2007 Opinion of Magistrate Judge Froeschner recalling EPT/PSL's writ of maritime attachment issued by the Southern District of Texas.  On March 28, 2008, Judge Burgess of the Western District of Washington vacated an attachment which had been issued by that court.    In ruling against EPT/PSL's motion for reconsideration, in an Order dated April 17, 2008, funds attached and deposited into Court were released and EPT/PSL were ordered to pay Aspen US$28,092.06 in compensation for bunkers removed from an Aspen chartered vessel.  EPT/PSL have to date failed to satisfy this order.

EPT/PSL's string of failures before the U.S. Courts aside, the recent developments that have occurred in Singapore may be the impetus for the present motion.

### SINGAPORE DEVELOPMENTS

The dispute underlying the present litigation between Aspen and EPT is currently being arbitrated in Singapore.  Declaration of K. Muralitherapany at ¶ 1 (hereinafter referred to as "Pany Decl.").  EPT has maintained that it assigned the Agreement between itself and Aspen to PSL and both EPT and PSL have maintained in the various litigations that Aspen was in some way preventing PSL from issuing proceedings against Aspen in  Singapore. *Pany Decl. at ¶ 3.*

3

As noted by Aspen's Singapore counsel, K. Muralitherapany in his accompanying Declaration Under Penalty of Perjury, this is not the case. According to Mr. Pany, all PSL need do to institute an arbitration is to appoint an arbitrator. *Pany Decl. at ¶ 4.* PSL has failed to institute arbitration proceedings.

The lack of arbitration proceedings by PSL is relevant to the present case because of the fact that the absence of PSL before a Singapore arbitration panel is being used as a reason to refuse to give Aspen access to any of the books and records which were kept pursuant to the Agreement, to enable Aspen to perform an audit. In response to Mr. Panay's request for access to the books and records kept in connection with the Agreement, he was advised by EPT/PSL's counsel that EPT has no books or records relating to Aspen and that they are in the possession of PSL. *Pany Decl. at ¶ 5.*

After being rebuffed, Mr. Pany made a further request by giving notice that Aspen was exercising its "absolute right" under the Agreement to audit the books and records maintained by either EPT or PSL. *Pany Decl. at ¶ 6.* EPT's response to this notice was to again note that EPT was not in possession of any such books or records. A further demand made to English counsel for EPT and PSL was rebuffed. *Pany Decl. at ¶ 6 - ¶ 8.*

As a result of the refusal of EPT to produce the books and accounts kept for and on behalf of Aspen, under the Agreement, Aspen made three applications to the Singapore Arbitral Tribunal for partial or interim awards: 1) for the production of documents for the purpose of an audit; 2) for payment of the monies that are being held in the impress account; and 3) the determination of certain preliminary issues. *Pany Decl. at ¶ 9 - ¶ 10 and Exhibits 5 – 9.* Among the preliminary issues that Aspen has asked the Arbitration Tribunal to decide is whether the Agreement had been assigned from EPT to PSL. *Pany Decl. Exhibit 10.*

4

In response to the three applications and two Affidavits in support of the applications by Sanjeev Bangad, EPT produced an affidavit by David R. Pulk. *Pany Decl. at ¶ 12 and Exhibit 10.* The Singapore Arbitration Tribunal has given Aspen until May 30, 2008 to file a reply to the Pulk affidavit. *Pany Decl. at ¶13.*

The money in the impress account belongs to Aspen; Jessie Baiza, the general manager of PSL has admitted that fact in an affidavit filed with the United States District Court for the Southern District of Texas. *Orzel Decl. at ¶ 12 and Exhibit P.* Jessie Baiza, while maintaining that PSL always acted in Aspen's best interests or with the express authority of Aspen, PSL outright refuses to comply with the proper instructions from Aspen to pay the funds in the impress account to Aspen or to allow Aspen to conduct an accounting of the funds and accounts which PSL has held.

### THE THREE PUPPETEERS

Throughout the course of the litigation being conducted by EPT/PSL in three U.S. District Courts as well as the arbitration in Singapore in which EPT is participating it has become clear that there are three men who are completely controlling the activities of both EPT and PSL, David Pulk, Neil Johnson and Jessie Baiza. They step in and out of the proceedings as circumstances dictate, but they are the men "pulling the strings."

### *Jessie Baiza*

Jesus R. Baiza has been identified as the "General Manager" of PSL. He is the declarant before the Southern District of Texas who has admitted that PSL is holding "approximately \$699,000" in funds in the impress account that belong to Aspen. (Orzel Decl. at ¶ 12 and Exhibit P). Jessie Baiza is also the "contact name" who appears upon the Texas Fictitious Business Name filing on behalf of PSL, filed in June, 2007. He is also the brother in law of David Pulk.

5

*Neil Johnson*

Neil Johnson, the self-described "principal" of PSL is the enigmatic member of the group. In the declaration which he filed in the companion *ProShipLine v. Aspen* matter, he described himself as a "principal" of PSL. This is the same declaration which Judge Burgess criticized in his decision vacating EPT/PSL's attachment in the Western District of Washington action. *Orzel Decl. ¶ 3 and Exhibit D.* In reality, however, Neil Johnson is identified as a director of both EPT and PSL in the filings obtained from the Texas Secretary of State's website. *Orzel Decl. ¶ 4 and ¶ 7 and Exhibits G and J .* According to the affidavit of David R. Pulk, filed in connection with the Singapore arbitration proceeding, Mr. Pulk says about Mr. Johnson that "[a]t no point did I or Neil Johnson get involved in the day-to-day running of PSL's business as we would not have had the time or the day-to-day knowledge of what was to be done…" See *Pany Decl. Exhibit 10 at ¶ 18.* This begs the question of why Mr. Johnson was qualified to file a declaration in the New York action attesting to PSL's damages while he had no knowledge of the day-to-day operation.

Neil Johnson was also a director of SE Shipping, the prospective desponent owner of the Aspen controlled vessels. *Orzel Decl. ¶ 13 and Exhibit Q.*

**David Pulk (The Master Puppeteer)**

David Pulk is the most compelling of the three individuals who seem to have orchestrated the activities of EPT and PSL. He is identified as a director of both EPT and PSL on the corporate filings obtained from the Texas Secretary of State. He is also identified as the registered agent for both EPT and PSL. *Orzel Decl. at ¶ 4 and ¶ 7 and Exhibits G and J.* He is identified as the president of both EPT and PSL in the Application for Registration of a Foreign Corporation, filed as part of the registration process with the Texas Secretary of State. He is also

identified as the president and chief executive officer of EPT by Dun & Bradstreet. *Orzel Decl. at ¶ 6 and Exhibit I.* Mr. Pulk acknowledges his connection with both EPT and PSL in the affidavit he filed in connection with EPT/PSL's opposition to Aspen's motion to vacate EPT/PSL's maritime attachment in the Southern District of Texas. *Orzel Decl. at ¶ 11 and Exhibit O.*

Mr. Pulk goes to great lengths to distance himself from the operation of PSL in his affidavit filed in the Singapore arbitration. In particular he notes that EPT received no financial benefit from PSL. *Pany Decl. at Exhibit 10, ¶ 27.* He claims that he and Mr. Johnson, as directors of PSL are authorized signatories on the impress account, yet he has no control over PSL. *Pany Decl. at Exhibit 10, ¶ 32.* Perhaps most incredibly, he advises the Singapore Arbitration Tribunal that should it order that EPT turnover books and documents to Aspen so that Aspen can conduct a full audit, "[i]n the event that the Tribunal were to order EP-Team to produce information or documents held by PSL it would not be within the power of EP-Team to comply with such order without the cooperation of PSL." *Pany Decl. at Exhibit 10, ¶ 34.* This statement came from a man who is one of the two directors of PSL, the president of PSL, a signatory on PSL's bank accounts and the registered agent for PSL, at EPT's corporate headquarters in Flower Mound, Texas. If he cannot comply with the order of the Arbitration Tribunal, who can? In his affidavit filed in Singapore, he never identifies who at PSL has the authority to undertake any action.

The corporate governance of both EPT and PSL, while under Mr. Pulk's control must not be very conscientious. A check of the State of Delaware Secretary of State's Office website reveals that both EPT and PSL are delinquent with regard to payment of their corporate taxes. *Orzel Decl. at ¶ 5 and ¶ 8 and Exhibits H and K.*

## THE PRESENT MOTION

The present motion by EPT to vacate the attachment in favor of Aspen is premised upon one ground, that because this Court dismissed PSL's attachment against Aspen in the companion case, it should also dismiss Aspen's attachment over EPT's assets on one of the same grounds, that the Southern District of Texas found that Aspen is present in that jurisdiction. This argument ignores two important issues: 1) EPT and PSL are either singularly or jointly seeking to have that finding reversed in the Second Circuit, the Southern District of Texas and probably before the Ninth Circuit and 2) while the Southern District of Texas found that Aspen was present within its jurisdiction, it based it finding that EPT was also present on EPT's own admission. There was never a judicial enquiry into whether EPT was in fact present.

Magistrate Judge Froeschner, in his December 18, 2007, Opinion and Order at no time addresses the issue of whether EPT is jurisdictionally "present" within the jurisdiction of the court. District Judge Rosenthal, in his Memorandum and Order overruling EPT/PSL's objection to the magistrate's opinion does not address whether EPT is jurisdictionally "present" within the jurisdiction of the court. There has, therefore, never been a judicial enquiry as to whether EPT is present within the jurisdiction of the Southern District of Texas. That enquiry therefore falls to this Court.

EPT relies upon the Declaration of Brian Kevin Rottinghaus (hereinafter "Rottinghaus Decl.") to establish that it is "present" within the jurisdiction of the Southern District of Texas. Mr. Rottinghaus' declaration, however, is factually lacking with regard to EPT's presence.

At ¶ 7 of the Rottinghaus Declaration introduces a letter addressed "To Whom It May Concern" which according to Mr. Rottinghaus, confirms that EP-Team would be sub-leasing part of the PSL space in the building. The letter is dated June 25, 2007 and yet one year later Mr.

8

Rottinghaus does not provide a copy of the sub-lease. Mr. Rottinghaus provides a floor plan for suite 690 at 3340 Greens Road, Houston, Texas, with different colored shading to differentiate between EPT's and PSL's office space. The shading, however, is illusory. At the top [along the left margin] of the plan is a true sketch of the office space. It can be seen that it is one continuous office, suite 690, and notably only has one set of toilet facilities. *Rottinghaus Decl. at Exhibit B.*

Mr. Rottinghaus' inclusion of a copy of the payment history of EPT's payments to General Maritime for the rental of office is unconvincing. As the Declaration of Robert Gutierrez in Opposition notes, he was a principal of General Maritime and has personal knowledge of the rent paid during the Spring of 2006. *Gutierrez Decl. at ¶ 2 – 3.* Mr. Gutierrez notes that the office space was rented for use by Roger Clark and Jessie Baiza, who were using the space as ProShipLine. *Gutierrez Decl. at ¶ 2.* Mr. Gutierrez confirms that during the 12 to 14 months that Genmar's offices were being used, it was by ProShipLine, and not EP-Team. EP-Team had transient employees come and go through the office for various periods of time, but that there was no permanent EP-Team presence. *Gutierrez Decl. at ¶ 5 – 6.*

Sanjeev Bangad, who was the person responsible for the operation of Aspen and who had negotiated the Agreement with EPT, was unaware of any presence of EPT personnel at the PSL offices in Houston. *Bangad Decl. at ¶ 5 – 6.* Mr. Bangad, who was present in the PSL offices in Houston on several occasions, never met Mr. Rottinghaus. *Bangad Decl. at ¶ 5.*

There is a lack of independent evidence to establish that EPT is present within the jurisdiction of the Southern district of Texas. Dun & Bradstreet in a comprehensive report printed on May 14, 2008, shows that there is only one location for EPT, at "3700 Forums Dr. Ste. 201, Flower Mound, TX 75028." This is the same report which notes that Mr. Rottinghaus

confirmed the information in the report as accurate. *Orzel Decl. at ¶ 6 and Exhibit I.* The Secretary of State of Texas, in its official filings, shows only one address for EPT, the Flower Mound, Texas address. *Orzel Decl. at ¶ 4 and Exhibit G.* Perhaps most importantly, the only address for the service of process upon EPT is the Flower Mound, Texas address, not in Houston, or anywhere else within the jurisdiction of the Southern District of Texas.

It should also be noted that EPT does not appear in the JOURNAL OF COMMERCE TRANSPORTATION TICKLER. The Transportation Tickler is the single source that the transportation industry uses as a national source for contact information. While EPT is not listed in the Transportation Tickler, it is very significant that ProShipLine is listed in the 2008 edition. *Orzel Decl. at ¶ 16 and Exhibit T.*

The absence of an entry for EPT in the Transportation Tickler is not difficult to understand given the declaration of Mr. Gutierrez. At ¶ 4, Mr. Gutierrez recounts how Roger Clark advised him that EPT was trying to keep a low profile with regard to the PSL operation in Houston because, "EP-Team wanted to keep its relationship with ProShipLine in Houston under wraps because they did not want the freight forwarders in Houston to see ProShipLine as a competitor. *Gutierrez Decl. at ¶ 4.* This also ties in with David Pulk's Singapore affidavit in which he notes that the linking of EPT to Aspen might be "damaging to EP-Team's core business providing logistic services if EP-Team were also seen in the market place as performing the role of a 'tied agent' for Aspen." *Pany Decl. at Exhibit 10, ¶ 11.*

**LEGAL ARGUMENT**

**POINT I**

**THE EVIDENCE DOES NOT**
**SUPPORT A FINDING THAT**
**EP-TEAM IS PRESENT IN**
**THE SOUTHERN DISTRICT OF TEXAS**

Jurisdictional "presence" in the context of a Rule B attachment requires that the defendant is not only subject to *in personam* jurisdiction in a district but also that it maintains a permanent presence there to support the conclusion that the defendant can be "found" within the district. The Second Circuit has held that this requirement presents "a two-pronged inquiry: First, whether (the respondent) can be found within the district in terms of jurisdiction, and second, if so, whether it can be found for service of process." *Seawind Compania, S. A. v. Crescent Line, Inc.*, 320 F.2d 580, 582 (2d Cir. 1963)(citations and internal quotes omitted). The Second Circuit has stated in dictum that the test for being "found" in a district under Rule B is whether the defendant has "'sufficient contacts with the district to meet minimum due process standards." *Winter Storm Shipping v. TPI,* 310 F.3d 263, 268 (2d Cir. 2002). "This requirement of being "found" within the district has traditionally been through a managing agent or a registered agent for the service of process. *Bay Casino v. m/v ROYAL EMPRESS,* 20 F. Supp. 2d 440 (E.D.N.Y. 1998); *Royal Swan Navigation v. Global Container Lines,* 868 F. Supp. 599. 602-603 (S.D.N.Y. 1994)(holding that a defendant could not be found within the district for jurisdictional purposes of Rule B where it had no individuals who were authorized to accept service of process in the district on a regular basis).

In the present case, EPT has failed to establish that it had any individual present in the Southern District of Texas on a regular basis who was authorized to accept service of process. EPT provided a declaration by Brian Kevin Rottinghaus in which he addresses several issues, but

11

he does not declare that he was authorized to accept service of process on behalf of EPT. The only publicly known authorized agent for the receipt of service of process on behalf of EPT is David R. Pulk, the president of EPT, who is located in the non-contiguous Northern district of Texas, not the Southern District of Texas.

Simply having an office and phone number located in the district is insufficient to establish "presence" for Rule B purposes. *Erne Shipping v. HBC Hamburg,* 409 F. Supp. 2d 427 (S.D.N.Y. 2006) (was impliedly reversed by the Second Circuit in *Aqua Stoli*, 460 F.3d 434 (2d Cir. 2006) based upon the requirement that the district court read into Rule B for a "need" for the attachment). *See also Seawind Compania*, 320 F.2d 580 (2d Cir. 1963); *Integrated Container,* 476 F. Supp. 119 (S.D.N.Y. 1979); *VTT Vulcan*, 684 F. Supp. 389 (S.D.N.Y. 1988).

The only evidence that is before the Court that EPT is "present" within the jurisdiction of the Southern District of Texas is that it has the use of two offices in a suite of offices from an affiliated company. No lease has been produced. The only declarant proffered by EPT states that his duties are limited to "servicing the accounts of EP-Team clients and providing administrative support to EP-Team's corporate management." Mr. Rottinghaus does not state whether those EPT clients are located in the Southern District of Texas. There is no proof that EPT conducts significant business in the Southern District of Texas.

As is evident from the recitation of what is happening in the Second Circuit Court of Appeals, the Southern District of Texas, and in the Ninth Circuit involving EPT and PSL, the argument being advanced in support of the present motion by EPT is "hypocritical." EPT is advocating that this Court vacate an attachment based upon grounds that it is arguing in other jurisdictions are erroneous. At the very least, until EPT and PSL's various appeals are decided, it is premature and inequitable to vacate the current attachment.

12

The burden of proof required in a case where the defendant is asserting equitable grounds for an order to vacate a maritime attachment in on that defendant. *Aqua Stoli v. Gardner Smith,* 460 F.3d 434, 445 nt. 5 (2d Cir. 2006). Unlike the companion case, where Aspen established three separate grounds justifying the Court's Order vacating the attachment of PSL: 1) that the claims being asserted by PSL were executory and therefore not within the admiralty jurisdiction of the Court; 2) that PSL abused the *ex parte* nature of Rule B; and 3) that based upon the finding by Magistrate Froeschner that Aspen was "present" within the jurisdiction of the Southern District of Texas [and as PSL and EPT had admitted their presence] it was proper to recall the writ of attachment. In the present case, EPT has failed to prove that it is entitled to an order vacating the attachment based upon the equitable grounds that both EPT and Aspen are present in the Southern District of Texas. Additionally, it is inconsistent for EPT to be arguing for an Order vacating the current attachment in favor of Aspen while it and PSL are appealing that very holding to three different courts. The current attachment should be allowed to continue.

### POINT II

### THE COURT HAS DISCRETION
### TO MAINTAIN THE ATTACHMENT

EPT is basing its current motion upon the holding of the Second Circuit in *Aqua Stoli v. Gardner Smith,* 460 F.3d 434 (2d Cir. 2006). The Second Circuit held that:

> We therefore hold that, in addition to having to meet the filing and service requirements of Rules B and E, an attachment should issue if the plaintiff shows that 1) it has a valid prima facie admiralty claim against the defendant; 2) the defendant cannot be found within the district; 3) the defendant's property may be found within the district; and 4) there is no statutory or maritime law bar to the attachment. Conversely, a district court must vacate an attachment if the plaintiff fails to sustain his burden of showing that he has satisfied the requirements of Rules B and E. **We**

13

> **also believe vacatur is appropriate in other limited circumstances. While, as we have noted, the exact scope of a district court's vacatur power is not before us, we believe that a district court may vacate the attachment if the defendant shows at the Rule E hearing that 1) the defendant is subject to suit in a convenient adjacent jurisdiction; 2) the plaintiff could obtain *in personam* jurisdiction over the defendant in the district where the plaintiff is located; or 3) the plaintiff has already obtained sufficient security for the potential judgment, by attachment or otherwise. [5]**
>
> 5   Rule E(4)(f) clearly places the burden on the plaintiff to show that an attachment was properly ordered and complied with the requirements of Rules B and E. Although Rule E does not explicitly mention a district court's equitable power to vacate an attachment or who bears such a burden, former Local Rule 12 required the defendant to establish any equitable grounds for vacatur, and we believe that defendants still bear that burden under the Supplemental Rules.

*Aqua Stoli v. Gardner Smith,* 460 F.3d 434, 445 (2d Cir. 2006)(Emphasis added).

The Second Circuit is clear that while the district courts have no discretion with regard to vacating maritime attachments if they do not meet the test imposed by Rules B and E, the district courts do have discretion to vacate or not to vacate based upon the three additional *Aqua Stoli* grounds.  Aspen believes that this is one of the cases where this Court should exercise its discretion and maintain the current attachment.

The totality of the evidence before the Court points to a conclusion that there is something unsavory about the way that EPT and PSL have been run.  David Pulk, the man behind both companies has taken contrary positions with regard to his degree of authority, depending upon the needs of any particular situation.  EPT and PSL have clearly expended huge amounts of money in trying to thwart the pending arbitration in Singapore.  In three different jurisdictions in this country, EPT and PSL have mounted a campaign of harassment based upon a claim for damages that at least one Federal District Judge has found to be insufficient.

The sole reason that EPT is advocating for the granting of an Order vacating the attachment is inconsistent.  EPT and PSL are arguing to three different courts, including the Second Circuit Court of Appeals, that the very reason that is being advocated in this motion is in error.  There is also contradictory and insufficient evidence to establish EPT's presence in the jurisdiction.  If the purpose of Rule B is to maintain any integrity, the Court should exercise the discretion that the Second Circuit has recognized and maintain the current attachment in favor of Aspen.

## CONCLUSION

For the foregoing reasons, the Court should deny the motion to vacate the writ of maritime attachment issued upon the complaint of plaintiff, Aspen Infrastructures, Ltd., against the property and assets of defendant EP-Team, Inc., and should allow the attachment to continue to be renewed until such time as Aspen is fully secured for its claims being asserted against EP-Team in Singapore arbitration together with such additional and further relief as may be deemed to be just and proper.

Dated: New York, New York
     May 15, 2008

                    **DEORCHIS & PARTNERS, LLP**
                    *Attorneys for Plaintiff*

                    By:_____/S/_____
                     John A. Orzel
                     61 Broadway, 26th Floor
                     New York, New York  10006-2802
                     (212) 344-4700
                     Our File: 2064-2