07 Civ. 8813 (RWS)

**DECLARATION OF
JOHN A. ORZEL IN OPPOSITION TO DEFENDANT'S M OTION TO
VACATE
MARITIME ATTACHMENT**

*Exhibit D*

1

2

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

3

4

PROSHIPLINE, INC., EP-TEAM, INC.,

Plaintiffs,

5

v.

6

7

ASPEN INFRASTRUCTURES, LTD., f/k/a
SUZLON INFRASTRUCTURE, LTD.,

8

Defendants.

9

10

MASTERS AND PURSERS OF THE M/S
MARGARETHA GREEN, *et al.*

Garnishees.

Case No. C07-5660FDB

ORDER GRANTING ASPEN'S
MOTION TO VACATE RULE B
ATTACHMENTS/GARNISHMENTS
AND TO EXONERATE SECURITY

11

## BACKGROUND

12

***The Contract:***    This cause of action concerns an alleged breach of contract.  Defendant

13

Aspen is a corporation under the laws of India, which manufactures and markets alternative energy

14

production devices, specifically, windmills.  Aspen  transports cargo by ocean-going vessels to

15

countries where it markets its goods, including the United States.  To avoid having the vessels return

16

empty to India, Aspen entered into the contract carriage business, soliciting cargos in the market

17

countries with destinations in Asia.  Thus, Aspen entered into a Sales and Logistic Services

18

Agreement (Agreement) with EP-Team (EPT) on April 9, 2006.  Under this Agreement, EPT was

19

appointed as Aspen's "General Sales and Port Services Agent" for Aspen in the United States.  The

20

Agreement provided that EPT, *inter alia*, would establish a sales and management operation to

21

secure freight and other associated revenues for Aspen-controlled tonnage calling at United States

22

ports. The Agreement also provided that if any dispute arose out of or in connection with the

23

Agreement, it would be arbitrated, under English law, in Singapore (unless another location was

24

mutually agreed).  EPT established ProShipLine (PSL) in Houston, Texas as agent for Aspen.

25

26

ORDER - 1

1  EPT/PSL arranged terminal facilities and cargo handling, collected freight, etc., and opened an

2  "impress" account at Bank of America into which funds collected on behalf of Aspen were to be

3  deposited and from which authorized payments were to be made.

4      On July 5, 2007, Aspen gave notice to EPT that it was terminating PSL as Aspen's agent.

5  EPT responded on July 6, 2007 that this was a violation of its contract. On July 30, 2007,

6  EPT/PSL's Texas counsel told Aspen's London counsel that as the contract was terminated by

7  Aspen as of August 1, 2007, EPT/PSL would no longer act on behalf of Aspen as of July 31, 2007.

8  Aspen contends that EPT/PSL continued to collect funds into the bank account and to distribute

9  funds without authority.

10     ***Other Proceedings:***   The contract termination outlined above has generated four other

11  cases in the Southern District of New York and the Southern District of Texas plus commencement

12  of arbitration proceedings in Singapore. The status of the various cases and date and place filed are

13  as follows:

14     **August 6, 2007 – *EPT AND PSL v. Aspen, S.D. Texas***: EPT/PSL sought declaratory relief

15  regarding the construction and enforcement of the contract. Aspen moved for a stay pending

16  arbitration in Singapore. Motion Granted on December 5, 2007 with leave to reinstate at close of

17  Singapore arbitration.

18     **August 2007 – Arbitration Proceedings, Singapore:** Aspen's Singapore counsel

19  commenced arbitration proceedings. EPT responded, but on December 14, 2007 gave notice that it

20  assigned all its rights under the contract to PSL. Then counsel for EPT/PSL announced that PSL

21  would not institute arbitration because PSL intended to pursue its claims in Texas.

22     **October 12, 2007 – *Aspen v. EP-Team, S.D.N.Y.*:** Aspen sought attachment to secure

23  award on its claims against EPT in arbitration. EPT never appeared.

24     **November 27, 2007 – *PSL & EPT v. Aspen, W.D. Wash.*:** PSL & EPT sought attachment

25  to secure claims and an order that Aspen proceed to arbitration in accordance with the Agreement.

26  ORDER - 2

1    **December 3, 2007 – _PSL v. Aspen, S.D.N.Y._**: PSL sought attachment, and the case

2    proceeded as follows:  January 16, 2008 – Aspen moved to vacate; February 1, 2008 – Court

3    granted Aspen's motion reasoning that:

4        1. PSL had no right to attachment because the claims are executory and , therefore, not

5    within the Court's admiralty jurisdiction;

6        2. Both Aspen and PSL are present in Texas;

7        3. PSL abused the ex parte Rule B process, because rather than appearing in the first New

8    York action where it would be entitled to assert a counterclaim and seek counter-security, PSL filed

9    a separate lawsuit knowing that Aspen was before the Court and yet still asserted that Aspen was not

10   "found" within the District.

11       **December 7, 2007 – _EPT & PSL v. Aspen, S.D. Texas_**: EPT and PSL sought attachment.

12   Aspen challenged attachment, and the Court held that Aspen had a general agent within the

13   jurisdiction such that Aspen was amenable to service of process, therefore Rule B attachment was

14   inappropriate.

15                    **DISCUSSION REGARDING ASPEN'S MOTION**

16       Aspen now challenges the propriety of PSL/EPT's attachments in this case and moves to

17   vacate the Rule B attachments/garnishments and to exonerate security under Admiralty Rule E(4)(f).

18   Aspen argues that the attachments must be vacated for several reasons, PSL/EPT have responded,

19   and the Court concludes that Aspen's motion must be granted in the main because (1) the issue the

20   propriety of attachment is subject to res judicata, the Southern District of New York having already

21   decided the validity of the attachment issue; (2) there is no valid maritime claim to support

22   attachment as PSL/EPT's claims are executory, not being fixed as to specific vessels, dates, and

23   voyages and, thus, not coming within admiralty jurisdiction; (3) all parties are found in the Southern

24   District of Texas rendering attachment to obtain jurisdiction over Aspen in this District unnecessary.

25       (A)    Aspen argues that the attachments herein are subject to res judicata pursuant to the

26   ORDER - 3

1   holding in the December 3, 2007 New York case because here the issues and claims are the same as

2   those in the Southern District of New York, the underlying facts are identical (breach of the same

3   contract), and there is identity of parties since PSL is a party in both cases and it is "in privity" with

4   EPT as EPT's assignee.

5        PSL/EPT argue that the rulings in the S.D.N.Y. are not "final" because an appeal has been

6   filed and the case has been stayed.

7        This argument is unavailing as it is settled law that neither an appeal nor post-ruling motions

8   deprive a ruling of finality for purposes of issue and claim preclusion. In *Tripati v. Henman*, 857

9   F.2d 1366, 1367 (9th Cir. 1988), the Ninth Circuit held that a Rule 59(e) motion did not deprive a

10  judgment of finality for *res judicata* purposes, and stated: "To deny preclusion in these

11  circumstances would lead to an absurd result: Litigants would be able to refile identical cases while

12  appeals are pending, enmeshing their opponents and the court system in tangles of duplicative

13  litigation."

14       **(B)**   Aspen argues that there is no valid maritime claim to support attachment. Aspen

15  argues that Plaintiffs do not seek lost profits resulting from services that were <u>actually provided</u> to a

16  specific vessel. Instead, they claim <u>anticipated</u> profits that they speculate would have been realized in

17  the future if they had provided services under the Agreement.

18       PSL/EPT argue that the Agreement at issue is maritime and argues that a breach prior to

19  contemplated performance does not mean that an action for breach of contract cannot lie for breach

20  of an executory contract, citing *Compania Argentina De Navegacion Dodero v. Atlas Maritime*

21  *Corporation*, 144 F. Supp 13 (S.D.N.Y. 1956) where the court held that breach of an executory

22  contract to deliver equipment to a particular ship, was within admiralty jurisdiction.

23       PSL/EPT's argument fails. In *Compania Argentina*, the contract at issue was to provide

24  certain auxiliary equipment for marine boilers for <u>a particular ocean-going ship to be delivered at a</u>

25  <u>particular time</u>, which the Court contrasted to cases relating to agreements to supply the owner of

26  ORDER - 4

1    several steamships all the fuel required by the steamships for a period of time.  In those cases, <u>no</u>

2    <u>particular vessel and no particular voyage was in the contemplation of either of the parties.</u>

3    Similarly, in this case, PSL/EPT makes estimates as to what it would have earned for unspecified

4    services in the future after July 31, 2007 without reference to specific vessels or voyages, which is

5    evident from a review the Johnson Declaration, attached to the Orzel Dec. At Dkt. No. 76, Ex. 3.

6    *Dolco Investments v. Moonriver Development*, 486 F. Supp. 2d 261 (S.D.N.Y. 2007) is on point in

7    ruling that claims for future commissions without reference to any fixed transaction as to specific

8    vessels, dates, and voyages do not come within admiralty jurisdiction:

9    > However, Dolco's claims for economic damages ... resulting from alleged repudiatory
   > breach of the Agreement or the Oral Agreement by Moonriver do not create an

10   > admiralty jurisdiction.  Despite the fact that the Agreement and Oral Agreement
   > pertain to just one vessel, the four year commitment to supply all operational items

11   > for the Vessel is analogous to requirements contracts that courts have found to be
   > outside of admiralty jurisdiction, rather than the one-transaction supply or repair

12   > contracts that fall within admiralty jurisdiction. *See Compania Argentina*, 144 F.
   > Supp. At 14 (distinguishing executory contracts for repair of a specific ship at a

13   > specific time as within admiralty from general requirements contracts as outside of
   > admiralty); *Steamship Overdale Co. v. Turner*, 206 F. 339, 341 (E.D. Pa.

14   > 1913)(contract to supply fuel to fleet of ships not within admiralty jurisdiction);
   > *Garcia*, 9 F. Supp. At 1011 (same); *cf. The Tankee*, 37 F. Supp. 512, 514 (E.D.N.Y.

15   > 1941)(holding that entire repudiation of repair contract by the defendant is not within
   > admiralty jurisdiction).

16   *Id.* at 267-68.  Accordingly, PSL/EPT's breach of contract claims for lost future revenues do not fall

17   within this Court's admiralty jurisdiction.

18       (C)    Aspen argues that PSL cannot prove a prima facie claim for damages because the

19   Agreement provided only that plaintiffs would be compensated for providing services to vessels

20   time-chartered to Aspen that were expected to call at United States ports in the future; thus,

21   PSL/EPT claim only speculative future lost profits, which they are unable to prove with reasonable

22   certainty supported by substantial evidence.

23       PSL/EPT did not respond to this argument.  Aspen's argument that the damages are

24   speculative, however, flows from the argument at sub-part (B) above that there is not a valid

25

26   ORDER - 5

1 │ maritime claim to support attachment. The claims for future commissions without reference to any

2 │ fixed transaction as to specific vessels, dates, and voyages do not come within admiralty jurisdiction.

3 │       **(D)**    Aspen argues that PSL/EPT are all present in another district and that attachment

4 │ here is unnecessary and inappropriate. Aspen argues that it is "present" in the S.D. of Texas, as are

5 │ PSL and EPT who have filed lawsuits involving the same underlying claims at issue here.

6 │       PSL/EPT argue that until the Southern District of Texas rules on the pending, opposed

7 │ motion for summary judgment, the issue of whether PSL/EPT are present in the Southern District of

8 │ Texas is open to reconsideration.

9 │       A District Court may vacate an attachment if the defendant can show that "1) the defendant is

10 │ present in a convenient adjacent jurisdiction; 2) the defendant is present in the district where the

11 │ plaintiff is located; or 3) the plaintiff has already obtained sufficient security for a judgment." *Aqua*

12 │ *Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.*, 460 F.3d 434, 436 (2d Cir. 2006) PSL/EPT's

13 │ argument is in conflict with their statement in their complaint in the Texas action under cause No. H-

14 │ 07-2549 where PSL/EPT are each described as having their principal place of business in Houston,

15 │ Texas. Additionally, in that case, the Court concluded in its opinion and order of December 18,

16 │ 2007 that Aspen maintains a general agent within the Southern District of Texas who could be

17 │ served with process.    The Court is not persuaded by PSL/EPT's argument and concludes that the

18 │ parties are present in the Southern District of Texas.

19 │       **(E)**    Aspen argues that PSL/EPT have not pursued their underlying claims in arbitration

20 │ contrary to the S.D. Texas Court's ruling that they must arbitrate their claims under the Agreement.

21 │ Aspen argues that PSL/EPT should not be allowed to obtain security for an anticipated arbitration

22 │ award while at the same time failing to arbitrate their claims.

23 │       PSL/EPT argue that in the Singapore arbitration proceedings, Aspen asserts that PSL is a

24 │ stranger to the Agreement and has not rights thereunder and that Aspen refuses to acknowledge the

25 │ assignment of the Agreement to PSL.

26 │ ORDER - 6

1    This Court is not convinced that PSL/EPT's arguments could not be presented in the

2    Singapore arbitration, where PSL/EPT, by its Complaint in this case, seeks to have its claims heard.

3         (F)    PSL/EPT present additional arguments in opposition to Aspen's motion to vacate.

4    PSL/EPT's arguments are presented below with Aspen's response and the Court's conclusion.

5             (1) First, PSL/EPT argue that judicial estoppel applies here because Aspen makes

6    arguments in the Southern District of New York (that the Agreement herein gives rise to an

7    admiralty and maritime claim) that are inconsistent with its arguments in this District (that the claims

8    for breach do not come within admiralty jurisdiction).

9        Aspen responds that it has never argued that PSL/EPT's executory breach of contract claims

10   came within the admiralty jurisdiction and that it succeeded with its argument in the Southern

11   District of New York.  Aspen, however, has its own claims against PSL/EPT for freight moneys

12   already earned but wrongfully collected and withheld by EPT.

13       Aspen's arguments have merit in that its claims are not executory, and the Court rejects

14   PSL/EPT's argument for application of judicial estoppel.

15            (2) Second, PSL/EPT argue that Aspen has already challenged the Rule B attachment

16   in this action during hearings in this District in December.

17       Aspen responds that this Court has never ruled upon any motion to vacate PSL/EPT's ex

18   parte attachment and that this Court has only addressed the propriety of the bond.  In later

19   proceedings in Seattle, Judge Robart declined to consider Aspen's objections to the propriety of the

20   Rule B attachment and stated that the parties would have to go back to this Court for determination

21   of that fundamental issue.  (See Transcript attached to Warner Decl., Ex. 2.)

22       The Court agrees with Aspen that the propriety of the attachment has not been addressed by

23   this Court or Judge Robart, and this Court concludes that Aspen's motion to vacate is appropriately

24   before it.

25            (3) Third, PSL/EPT argue that because Aspen essentially challenges this Court's

26   ORDER - 7

1  jurisdiction, their motion falls under Fed. R. Civ. P. 12(b)(6) and Aspen has strayed far beyond the

2  pleadings; therefore, if the motion were to be considered one for summary judgment, PSL/EPT

3  should be allowed to conduct discovery as to the underlying facts.

4      Aspen responds that it is properly proceeding under Rule E(4)(f) and LAR 115(d) where

5  PSL/EPT has the burden to show cause why attachment should not be vacated.

6      The Court agrees with Aspen that PSL/SPT's argument is flawed and that the motion to

7  vacate is appropriately before it as such and not as a 12(b)(6) or summary judgment motion.

8      (4) Fourth, PSL/EPT argue that this Court's stay is violated by Aspen's motion.

9      This argument is also without merit, as the case was stayed pending arbitration in Singapore,

10 and the matter of the appropriateness of the attachment was to be considered later.

11                                **CONCLUSION**

12     For all the foregoing reasons, the Court concludes that Aspen's Motion to Vacate Rule B

13 attachments must be granted.  NOW, THEREFORE, IT IS ORDERED:

14     1.   Aspen's Motion to Vacate Rule B Attachments/Garnishments and to Exonerate

15          Security [Dkt. # 75] is GRANTED;

16     2.   The Order for Issuance of Process of Maritime Attachment and Garnishment and the

17          Writ of Maritime Attachment and Garnishment, both dated November 27, 2007, are

18          hereby VACATED and all security and attached/garnished property is hereby

19          exonerated;

20     3.   The Clerk shall forthwith release to Aspen's counsel all substitute security that has

21          been posted and Plaintiffs PROSHIPLINE and EP-TEAM shall forthwith pay to

22          Aspen's counsel the full local market value (as of the time of attachment) of all

23          bunkers attached without deduction of any costs that plaintiffs may have incurred to

24          attach, handle, and/or sell the bunkers.

25     DATED this 28th day of March, 2008.

26 ORDER - 8

1

2

FRANKLIN D. BURGESS
UNITED STATES DISTRICT JUDGE

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26  ORDER - 9