07 Civ. 8813 (RWS)


DECLARATION OF
JOHN A. ORZEL IN OPPOSITION TO DEFENDANT'S M OTION TO
VACATE
MARITIME ATTACHMENT


*Exhibit R*

```
 1              IN THE UNITED STATES DISTRICT COURT

 2              FOR THE SOUTHERN DISTRICT OF TEXAS

 3                     GALVESTON DIVISION

 4  PROSHIPLINE, INC. AND       §   CASE NO. 4:07-CV-4170
    EP-TEAM, INC.               §
 5                              §
    VERSUS                      §   GALVESTON, TEXAS
 6                              §
    M/V BELUGA REVOLUTION AND   §   APRIL 30, 2008
 7  ASPEN INFRASTRUCTURES LTD   §   10:01 A.M. TO 10:21 A.M.

 8
            OPPOSED MOTION FOR ENTRY OF FINAL JUDGMENT
 9                 AND MOTION FOR RECONSIDERATION

10
             BEFORE THE HONORABLE JOHN R. FROESCHNER
11                UNITED STATES MAGISTRATE JUDGE

12

13                       APPEARANCES:

14       FOR PLAINTIFFS:       SEE NEXT PAGE

15       FOR DEFENDANTS:       SEE NEXT PAGE

16       COURTROOM DEPUTY:     S. ANDERSON

17       COURT RECORDER:       JAN SCHON

18

19
                         PREPARED BY:
20
            JUDICIAL TRANSCRIBERS OF TEXAS, INC.
21                    P.O. Box 925675
                 Houston, Texas 77292-5675
22         Tel: 713-697-4718 ▼ Fax: 713-697-4722
                 www.judicialtranscribers.com
23

24
    Proceedings recorded by electronic sound recording;
25     transcript produced by transcription service.
```

1                           **APPEARANCES:**

3  FOR PLAINTIFFS:            ANDREW Z. SCHRECK
                              SHANNON GRACEY, et al
4                             1301 McKINNEY, SUITE 2920
                              HOUSTON, TEXAS   77010
5                             (713) 255-4700

6                             MARK W. ROMNEY
                              SHANNON GRACEY, et al
7                             500 N. AKARD, SUITE 2500
                              DALLAS, TEXAS   75201
8                             (214) 245-3062

10 FOR DEFENDANTS:            KEITH B. LETOURNEAU
                              BELL RYNIKER, et al
11                            5847 SAN FELIPE, SUITE 4600
                              HOUSTON, TEXAS   77057
12                            (713) 871-8822

1         **GALVESTON, TEXAS; APRIL 30, 2008; 10:01 A.M.**
2              **THE COURT:**  For the record, this is Houston Civil
3  Case, 2007-4170, P*roshipline versus M/V Beluga and others*.
4              Can I get appearances for the record?  Who's
5  here for the plaintiffs?
6              **MR. ROMNEY:**  Mark Romney for the plaintiffs, as
7  well as Andy Schreck.
8              **THE COURT:**  Okay.  Thanks for coming by.
9              **MR. LETOURNEAU:**  Good morning, Your Honor.  Keith
10  Letourneau for defendants, Aspen Infrastructure Ltd.
11             **THE COURT:**  Okay.  I've read through your
12  submissions but I guess my first question is:  Isn't this
13  whole thing moot because the bunkers are gone?
14             **MR. SCHRECK:**  May I address that, Your Honor?
15             **THE COURT:**  Yeah.
16             **MR. SCHRECK:**  Andy Schreck.  Ordinarily it would
17  be, Judge.  The ship's long gone; there's nothing to attach.
18  ==The problem is, a result of what I would call the presence==
19  ==finding in the Court, there's been a domino effect in other==
20  ==districts around the country.  And what's happening -- what==
21  ==Keith's client has done, which is what I would do, is==
22  ==they've taken this presence finding and used it to defeat==
23  ==attachments that we've attempted in Washington and in New==
24  ==York.==
25             **THE COURT:**  How does that work?  I was curious.

1   I've read that and I thought: What difference does it make
2   if there's a general agent in the Southern District of Texas
3   playing a seizure in New York?
4           **MR. SCHRECK:** Judge, we're baffled by it as well.
5       **(Laughter)**
6           **MR. SCHRECK:** And those cases are going up for
7   that reason on appeal. But what we're concerned about is we
8   represent a Texas -- a couple of Texas companies. We have
9   an Indian foreign defendant and we may never get our money
10  if we win in an arbitration unless we protect the right to
11  attach. And that's why -- that's why we're down here taking
12  up the Court's time this morning.
13          **THE COURT:** Yeah, but I mean, what do we
14  accomplish? Because isn't -- You're welcome to sit down,
15  please. I mean isn't the presence of a general agent sort
16  of a snapshot situation? You either have one or you don't
17  at the given time that the rule of the attachment is placed.
18  So the fact that I found that Mr. Gutierrez was the agent on
19  a specific day, if he's no longer the agent because of SE
20  Shipping, whatever the other boatman is, then it doesn't
21  have any impact. I mean, it doesn't have staying power.
22  It's not like you can't seize another ship if you make a
23  diligent effort to find out whether Gutierrez is still the
24  general agent or not; does it?
25          **MR. SCHRECK:** I believe that's correct, Your

```
 1  Honor.
 2            THE COURT:  Okay.
 3            MR. SCHRECK:  What we're trying to do is -- we're
 4  focused really on the Washington and New York actions right
 5  now.  Because we did seize assets in both those cases and I
 6  believe they've both been dissolved.
 7            THE COURT:  Weren't they dissolved on an
 8  executory contract doctrine more so than on the presence of
 9  a general agent in the Southern District of Texas?
10            MR. SCHRECK:  I couldn't tell which way those
11  judges gave more weight to, Your Honor, honestly.
12            THE COURT:  It sounded like it was more on the
13  executory contract doctrine but again, I guess, I'm getting
14  back to:  If I were to -- Well --
15            MR. SCHRECK:  I think I see -- I read your mind,
16  Judge.  What I --
17            THE COURT:  Yeah.  What's the order you want me
18  to address if you win?
19            MR. SCHRECK:  What I've talked to Mr. Romney
20  about -- and I did mention this to Keith -- is we just
21  want -- we'd like to finish our bite at the apple.  I think
22  at the hearing we -- my sense is we started it but because
23  of the relationship between Aspen, Suzlon, Marko Trans
24  [sp.ph.], and this company called SE Shipping, I don't think
25  it's really clear and hence, I'm not sure it's clear who
```

1  General Maritime [sp.ph.] was really working for on December
2  7 when this lawsuit was filed.
3             We would like to ask the Court to reopen the
4  record for a limited time for limited discovery on that
5  point which would probably be the deposition of Mr.
6  Gutierrez with him producing documents to look at.  And it
7  may be or it may not be the deposition of Mr. Bangad, who's
8  the general manager of Suzlon just to figure out who exactly
9  Gutierrez was working for on December 7 because I'm not sure
10 that's clear.
11        **THE COURT:**  Yeah, but I guess I'm -- Where does
12 that get me other than wasting my time?
13        **MR. SCHRECK:**  Judge, I think it just would --
14        **THE COURT:**  I mean, what do we get -- at the end
15 of the day, what do we get?  We get us finding that, oh
16 Froeschner was wrong, Gutierrez wasn't a general agent but
17 we already get a general appearance by the defendants in
18 this case.  The fact that I would make that determination
19 doesn't get the bunkers back because they're just in the
20 ozone now, I guess, because that's what they were, was fuel.
21            So, it just what?  Defeats this one finding
22 so that you can go around the country and say that hasn't
23 been there.  I mean, what do we accomplish by doing that, I
24 guess, except spending a lot of money and time to get
25 nowhere because this is an arbitration case so it obviously

1  can't be litigated here.  It's over for the most part, I
2  think.
3              **MR. SCHRECK:**  Well, the attachments are critical,
4  Your Honor, the ability -- We're still struggling to get
5  into the same arbitration with Aspen and EP-Team, that is,
6  Proshipline is.  And I won't go into that unless the Court
7  asks.  But as to what -- as to -- I don't think it would be
8  a waste of your time, Judge, because we're not saying you
9  got it wrong; we're just saying that additional facts need
10 to be developed that weren't at the time.
11             Now, did we have a chance to cross examine
12 Mr. Gutierrez?  Yes, we did.  But, Judge, as you know the
13 Rule B proceeding is quick.  We don't have as many documents
14 as you would with ordinary discovery.  And this is an
15 unusual case in that the presence finding here being relied
16 on by those trial judges out of state to defeat those
17 attachments and we would like to be able have you reconsider
18 that with the additional information and then take it back
19 to those courts and say --
20             **THE COURT:**  Do you agree with my observation that
21 it's wrong for the Washington court and the New York court
22 to make a determination about whether a general agent in the
23 Southern District of Texas has any impact on those Rule B
24 attachments there?  I mean, I don't understand what the
25 judge was saying that the facts that they could be found in

```
 1  Texas has anything to do with the Southern District of New
 2  York Rule B attachment.  Does that -- That doesn't make any
 3  sense to you; does it?
 4          MR. SCHRECK:  It doesn't, Judge.
 5          THE COURT:  Okay.
 6          MR. SCHRECK:  But the risk is, especially in the
 7  Second Circuit, where the lost -- the Aqua Stolley [sp.ph.]
 8  case and others were hard to understand --
 9          THE COURT:  Yeah.  Yeah.
10          MR. SCHRECK:  The risk is that the fact that
11  plaintiff and defendant are both present here may be
12  determinative in that attachment action in New York even on
13  appeal.  I don't understand it.
14          THE COURT:  Yeah, I don't understand that either.
15  And if we're right about that and if on appeal they find --
16  well, I guess, there are other problems there.  They're
17  probably never going to reach that issue, but -- Well, okay.
18              Then, assuming this really is a 60B motion,
19  and I guess it is because the bunkers are gone and so
20  that's -- even though we still got the lawsuit pending, I
21  think there's some case law that says that would be a
22  collateral appeal order had you asked me to withhold the
23  vacature order, then isn't Mr. Letourneau's position that
24  this isn't really discovered evidence pretty much against
25  you, the SES involvement?  Because you knew about it with
```

1  the email and also there really isn't any newly discovered
2  evidence that would --
3              I guess what I'm saying is:  If we assume
4  the Rule 60B standard applies as opposed to this just being
5  an interlocutory order that we could revisit at any time,
6  then the Rule 60B standard requires that you show there's
7  newly discovered evidence that you could not with due
8  diligence have found out about before the hearing, but you
9  have that email that told you that SE Shipping was now
10 involved; wasn't that the issue you were saying was newly
11 discovered that it impacts on my decision?
12         **MR. SCHRECK:**  Yes, sir, that's correct.  In our
13 two -- there are two basis under Rule 60.  I mean there are
14 really two proposals I would make, Your Honor.  One would be
15 to keep the status quo as to your prior order, Judge
16 Rosenthal's order if we can, reopen the record for a limited
17 discovery and then come back and re-continue this hearing
18 unless Keith and I set the depositions and hear the same
19 thing and we conclude it's a waste of time and you win.  Or
20 pursue this as a Rule 60B(2) newly discovered evidence to
21 Rule 60B(6), which is the extraordinary circumstance rule --
22 or unusually circumstance rule.
23             You're right, Judge.  We had that email
24 about SE but what was not clear until you read Mr. Bangad's
25 affidavit was that SE Shipping, and understand Keith's

1  argument that it's unclear when SE took over the chartering
2  or got involved, I agree with that.  All I'm asking is let's
3  figure that out.  Let's see some documents.  Let's see some
4  charter parties.  Let's see some sub-charter parties.  If
5  they're right and in December of 2007 it wasn't SE Shipping
6  or there was a connection between General Maritime and Aspen
7  then we ought to lose.
8        **THE COURT:**  What would be the unusual
9  circumstances that would pigeonhole you in the B(6)?
10       **MR. SCHRECK:**  Your Honor, I acknowledge that it
11 takes a lot.  I mean, I've read the cases.  It's hard to
12 find any where courts that have granted relief under that
13 section.  The only thing I would assert would be in terms of
14 equities is the use of the presence finding here in these
15 other districts to defeat those attachments.  That's part in
16 parcel of an ongoing fight we've got with them about the
17 arbitration.  It's just we can't get any relief.
18       **THE COURT:**  Right.  But I think in a way I'm just
19 saying, okay, maybe if I have to consider that somewhere
20 down the line, I'm really just doing that as an
21 accommodation to you people so that you can say, that's not
22 in existence anymore.  But it really doesn't -- it doesn't
23 get us anywhere in our lawsuit here; does it?  It just gets
24 you in a better position in other lawsuits in other
25 jurisdictions if and when they raise it at some point in

1  time.
2        **MR. SCHRECK:** As a practical matter, that's
3  right, Judge. We change what the order says; we're not
4  getting any relief here.
5        **THE COURT:** That's what I mean.
6        **MR. SCHRECK:** That's right.
7        **THE COURT:** So, okay.
8        **MR. SCHRECK:** And for that reason there's not
9  any -- I don't think there's any prejudice to Aspen.
10 There's no ship around or no property to attach.
11       **THE COURT:** Well, their money. They have to go
12 to depositions in Indiana and things like that.
13       **MR. SCHRECK:** Sure. I don't mean to belittle
14 that. I'm just -- As far as any risk of us grabbing their
15 property, that's gone.
16       **MR. LETOURNEAU:** Judge, may I respond?
17       **THE COURT:** Yeah, sure.
18       **MR. LETOURNEAU:** In a variety of respects, I
19 would have to respectfully disagree with my opponents.
20       **THE COURT:** Sure.
21       **MR. LETOURNEAU:** Judge, in New York as well as in
22 Washington, they have both found that these were executory
23 contracts and consequently they don't fall within admiralty
24 jurisdiction. Mr. Romney and Mr. Schreck have made the
25 argument that Aspen has taken inconsistent positions in New

1  York with respect to the existence of admiralty
2  jurisdiction.  In fact, Aspen has taken an entirely
3  consistent position because they had claims, (indiscernible)
4  and freight.
5              So admiralty jurisdiction does exist in New
6  York.  Whereas the executory contract for future damages
7  doesn't fall within admiralty jurisdiction.  And because of
8  that those courts have now found that, there's no basis for
9  this action to proceed.  They are collaterally estopped or
10 res judicata applies to bar any future litigation with
11 respect to these claims.  While I cited to you the
12 provisions of the Western District of Washington decision
13 relating to presence within the jurisdiction, I did so
14 because they essentially adopted the deal with respect to
15 general maritime and it probably just dovetails with the
16 decision you had previously made.  ==But we make no==
17 ==representations about EP-Team's presence in this district.==
18              The *Aqua Stolley* ==decision with respect to==
19 ==presence is a basis for the Second Circuit and the Southern==
20 ==District of New York to find that maritime jurisdiction==
21 ==doesn't exist there because the parties allegedly are==
22 ==present here.==  ==We take no position with respect to EP-Team==
23 ==being present here on that== *Aqua Stolley* ==decision.==
24              But that's not the underlying basis which we
25 contest any future activity here.  Ours is twofold:  one is

1  they're collaterally estopped because of decisions in New
2  York and the Western District of Washington on executory
3  contract theory; and two, the SE Shipping information was
4  available to them.  It was available in July of '07.  They
5  had the opportunity to examine Mr. Gutierrez at length in
6  this court.  Then, Mr. Bangad issued that affidavit which
7  was still consistent with the previous information that was
8  provided and they had the opportunity to submit that to
9  Judge Rosenthal before she issued her order on the
10 evaluation of your decision as to vacating the writ of
11 attachment.
12            So, from your prospective, we don't see that
13 there's any basis to continue the proceedings here and we
14 don't want to do that, frankly.
15      **THE COURT:**  What's your -- what's your thoughts
16 about this all being moot?
17      **MR. LETOURNEAU:**  I'm sorry?
18      **THE COURT:**  What are your thoughts about this
19 all just being rendered moot by the fact we vacated the Rule
20 B attachment and the Rule B attachment was on bunkers which,
21 I think, are just fuel; right?  Which is now just been
22 burned and it's gone and that property no longer exists.
23      **MR. LETOURNEAU:**  Well, Judge, I agree with that.
24 I mean, the fact of the matter is there is no property to be
25 seized.  It was a writ of attachment for the Beluga

Case 1:07-cv-08813-RWS   Document 24-19   Filed 05/16/2008   Page 15 of 20

14

1  Revolution's bunkers and that vessel is not here.  It is
2  moot for all practical purposes.  If they file suit again,
3  then the basis would be -- they would have to establish that
4  we're not present within the district again if there's no
5  vessel that comes in.
6          **THE COURT:**  But it would be against other
7  property; it wouldn't be against this property?
8          **MR. LETOURNEAU:**  It would be against other
9  property, not this property.
10         **THE COURT:**  Yeah.  Do you think this is a Rule
11 60B situation?
12         **MR. LETOURNEAU:**  No, Judge, I don't for the
13 reasons I just stated, and that is that that information
14 concerning SE Shipping was available to them and they had
15 the opportunity --
16         **THE COURT:**  No, no.  I mean, do you think we
17 should review it under the standard as if it's asking for
18 Rule 60B relief?
19         **MR. LETOURNEAU:**  Again, I think under Rule 60B
20 the only criteria that they could possibly meet would be --
21         **THE COURT:**  No, that's not -- I'm sorry, Keith.
22 Do you think that the order that Judge Rosenthal entered
23 adopting my report and recommendation is a collateral order
24 that therefore should be treated under Rule 60B?
25         **MR. LETOURNEAU:**  Under Rule 60B.

1        **THE COURT:**  Or is it just an order that was
2   issued by the Court while the case is still pending because
3   the case is still pending which the Court can review anytime
4   it wants without hardly any standard at all?
5        **MR. LETOURNEAU:**  No, Judge.  I do -- In that
6   respect, I do believe it's 60B and the reason for that is
7   because the order vacating the writ essentially disposed of
8   the case.
9        **THE COURT:**  That's what I think, too.  I think
10  it's a 60B situation and I don't think we've got newly
11  discovered evidence.
12              And as you were saying, Mr. Schreck, B(6)
13  paragraph is pretty tough to get relief in.  And the relief
14  you're asking for again, just sort of seems to me to be and
15  accommodation to your people which, you know, I mean it
16  would be nice if I could do it for you, but I'm not sure it
17  advances this litigation to any degree at all.
18              But I'll listen to anything more you want to
19  say about it.
20       **MR. SCHRECK:**  Well, I think you essentially have
21  your mind made up, Judge, but one element that I point to
22  and I did -- I filed a supplemental brief and I provided a
23  copy to Keith in a case called *U.S. versus Orange Parish*
24  *School Board* [sp.ph.] out of the Fifth Circuit.  One of the
25  elements in the Rule 60B(6) consideration is the risk that

1  denying relief will produce injustice in other cases.  And
2  justice is in the eye of the beholder obviously and this is
3  not life or death.
4             But we do think that these other courts have
5  seized on the presence finding here unfairly and incorrectly
6  and, you know, the issue of whether reopening the record or
7  the citing this as a Rule 60 eventually will be moot as to
8  this case but the effect of the decision is going to be --
9  is being relied on by these other two courts in causing the
10 expenditure of a lot of money and time that we would like to
11 stop and undo by reopening the record and submitting the
12 additional information to you.
13            In fair -- I mean, did we know about SE
14 Shipping with that email?  Sure we did.  Did we know -- but
15 do we know about the relationship as of December 2007?  No.
16 I wasn't at the hearing but I don't think there were any
17 documents brought to you in terms of charter parties or
18 emails or letters or faxes in December, November, that in
19 time frame that showed who General Maritime was working for
20 at that time.
21            So there was nothing for us to submit to you
22 or Judge Rosenthal.  There's still not until we have a
23 chance to explore that.
24       **THE COURT:**  But if it's a Rule 60B situation and
25 that standard applies, then the Court doesn't have the

1  authority to just reopen the record; does it?
2         **MR. SCHRECK:** I don't believe you do, Judge, and
3  that's why at the outset I stated, more or less, in the
4  alternative that if you consider Rule 60, we believe we've
5  met the standards. If it's not Rule 60 and it's more in the
6  nature of interlocutory decision, we would ask that the
7  record be reopened for a limited time for the discovery as
8  we discussed.
9         **THE COURT:** But I think it's Rule 60B because of
10 the mootness issue and because the property is gone and
11 there's nothing we can do to remedy that no matter how many
12 times we reopen the record. I mean, there's really not much
13 we can do. The bunkers are gone. That's -- Okay.
14             Now, I'm just curious about something
15 because it was probably off the mark and if you don't want
16 to talk about it, just tell me. But if these are executory
17 contracts then it's my understanding that they probably
18 could -- they could probably lead to an attachment if there
19 was money that was still owed to you for work you've already
20 done.
21             Is that a claim in this lawsuit or are you
22 just making a claim for property [sic] that you -- for
23 profits that you are not going to get because the contract
24 was breached?
25        **MR. SCHRECK:** It's the latter, Judge, because the

1  power services have been paid for.  But as to the executory
2  contract issue, the Supreme Court addressed this, at least
3  indirectly, in *North Exceller versus Kirby* [sp.ph.], the
4  focus being on what is the nature of the services of the
5  agreement.  That's the only issue, not what the damages are.
6  And I think eventually that's going to get briefed and
7  looked at by the Ninth Circuit and the Second Circuit in
8  these cases we've alluded to, but we strongly disagree with
9  that executory contract theory.
10         **THE COURT:**  Okay.  Okay.  It looks like it's
11 pretty inviting to me if I were the judge and we were
12 dealing with it.  But I'm still not sure that even if they
13 find that you could attachment for money that was owed, I'm
14 not sure you could ever get your anticipated profits --
15 Well, whatever.  I guess that's off the mark.  But anything
16 else you want to say before we close this record?
17         **(Laughter)**
18         **MR. SCHRECK:**  No, Your Honor, not at this time.
19         **THE COURT:**  Okay.  Keith?
20         **MR. LETOURNEAU:**  Nothing else, Judge.
21         **THE COURT:**  Okay.  Well, I'll see if should
22 change Judge Rosenthal's mind and I'll let you know.  Okay.
23 Thanks.
24         **(This proceeding was concluded at 10:23 a.m.)**
25

JUDICIAL TRANSCRIBERS OF TEXAS, INC.

```
 1  /s lvmartin
 2  BY: JUDICIAL TRANSCRIBERS OF TEXAS, INC.
 3  OWNER: LISA A. DICKSON
 4  JTT JOB/INVOICE #26777:83
 5  MAY 15, 2008
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25                    * * * * *
```

JUDICIAL TRANSCRIBERS OF TEXAS, INC.