HILL RIVKINS & HAYDEN LLP
*Attorneys for Defendant*
45 Broadway, Suite 1500
New York, New York 10006
Tel: (212) 669-0600
Fax: (212) 669-0699

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ASPEN INFRASTRUCTURES LTD., F/K/A
SUZLON INFRASTRUCTURE LTD.,

    Plaintiff,

vs.

E.P. TEAM, INC.,

    Defendant.

: Index No.:  07 CIV 8813(RWS)

---

## REPLY MEMORANDUM OF LAW IN SUPPORT OF
## THE MOTION OF DEFENDANT EP-TEAM, INC.,
## TO VACATE CERTAIN RULE B ATTACHMENTS

### PRELIMINARY STATEMENT

Defendant, EP-Team, Inc., ("EP") submits this reply memorandum in further support of its motion pursuant to Rule E(4)(f) of the Supplemental Admiralty Rules of the Federal Rule of Civil Procedure. EP seeks to vacate the Order of Maritime Attachment in this case, and to vacate the attachment of funds obtained through service of Process of Maritime Attachment and Garnishment upon certain banks acting as garnishees in this district. As set out in detail below, the opposition papers of Plaintiff Aspen Infrastructures Ltd. ("Aspen") fail to establish why this Court should not properly exercise its discretion to vacate the attachment in the face of Aspen's judicially determined presence in the same district where EP maintains permanent offices.

Deficient on both the law and the facts, Aspen instead improperly seeks to prejudice the Court against EP by impugning the integrity of EP's principals with irrelevant innuendo. The only relevant facts this Court need to consider on this motion are Aspen's judicially determined presence in the Southern District of Texas, EP's permanent presence in the same district, and Aspen's refusal to voluntarily vacate its attachments even after the attachments of EP's affiliate, ProShipLine, Inc. ("PSL"), have been vacated and the funds released because of Aspen's claimed presence in Texas. This Court should properly vacate each of these purported attachments listed in EP's moving papers, as well as the subsequent attachment in the amount of $17,807.34 set out in Exhibit S to Aspen's opposition papers.

## ARGUMENT

Point I of Aspen's Opposition Memorandum of Law essentially rests Aspen's opposition to the motion to vacate on the issue of whether Brian Kevin Rottinghaus is authorized to accept service of process. The hubris reflected in this claim is the exact reason why the federal courts recognize the doctrine of judicial estoppel. Aspen successfully argued to Magistrate Judge Froeschner in Galveston that a defendant does not have to show that its so-called managing agent in the district is authorized to accept service of process before the defendant will be deemed present in the district for purposed of Rule B. This Court, in the related action brought by PSL, adopted Magistrate Judge Froeschner's findings and ordered that PSL's attachment of Aspen's property in New York be vacated. Although Aspen may at this point purport to disagree with that proposition, as the proposition no longer suits Aspen, it is judicially estopped from saying so, as this Court concluded in Briarpatch Ltd. L.P. v. Geisler Roberdeau, Inc., 2007 WL 1040809, at *15-16 (S.D.N.Y. 2007).

Aspen's current tactic implicates the precise rationale the Court of Appeals set out as the basis for the doctrine of judicial estoppel in Bates v. Long Island R.R. Co., 997 F.2d 1028 (2d Cir. 1993):

> judicial estoppel protects the sanctity of the oath and the integrity of the judicial process. Thus, there are two distinct objectives behind judicial estoppel, both of which seek to protect the judicial system. First, the doctrine seeks to preserve the sanctity of the oath by demanding absolute truth and consistency in all sworn positions. Preserving the sanctity of the oath prevents the perpetuation of untruths which damage public confidence in the integrity of the judicial system. Second, the doctrine seeks to protect judicial integrity by avoiding the risk of inconsistent results in two proceedings.

Id. at 1037-38. Aspen seeks to disavow the position it asserted in Texas, that its tenuous relationship with General Maritime Agency ("GenMar") established presence in Texas despite no indication that GenMar was authorized to accept service on behalf of Aspen, in order to gain an unfair advantage and give rise to inconsistent results in different judicial proceedings.

There can be no serious question that EP's presence in the Southern District of Texas is considerably stronger than Aspen's, where Aspen's purported presence has already served as the basis for vacatur of order of maritime attachment in three separate districts. Aspen was found to be present in Texas solely by virtue of its claimed retention of GenMar to act as an agent. Aspen made no claim that it had any office in the district, or any address where it could receive correspondence, or that it had appointed any individual to act as an authorized agent for service. EP, on the other hand, has maintained a permanent office in Houston since early in 2007, currently staffed by two

3

full time employees.[1]  EP's Houston office has dedicated access to and from the common areas of the office complex in which it resides, with its own mailbox in that same complex.  Although EP may not have formally declared that Mr. Rottinghaus is authorized to accept service of process on behalf of EP, it is farcical to suggest that service of process upon EP could not be affected by serving the company's Director of Strategic Operations, responsible for servicing the accounts of EP's clients and providing administrative support to EP's corporate management.  The absurdity is especially acute when it is made by a party that has successfully argued that the presence of an individual capable of being served with process is not really a requirement for presence.

Aspen seeks to obscure its inconsistent positions by pointing the finger at EP, accusing it of being "hypocritical".  (Opposition Memorandum at 12).  EP certainly does not dispute that its affiliate, PSL, through the undersigned counsel, has appealed this Court's decision vacating the attachments against Aspen.  Until the Court of Appeals hears PSL's appeal and reverses, however, the only judicial determinations on record hold that Aspen's meager connection to the Southern District of Texas precludes an attachment by a party that is also present there.  When PSL sought to obtain stays of this Court's decision vacating the attachments, Aspen opposed, but now claims that the status quo should be maintained.  What is truly confounding and hypocritical is Aspen's argument that every attachment but its own should be vacated while the Second Circuit considers PSL's appeal.  Such a scenario does not benefit the judicial system but would certainly benefit Aspen.

---

[1] Aspen attempts to raise some questions as to the extent of EP's presence in the Southern District of Texas through the puzzling Declaration of Robert Gutierrez, which on its face consists primarily of hearsay and other statements lacking in any evidentiary foundation.

4

Aspen's final argument, based entirely on unsupported innuendo, seeks to keep the improper attachment alive solely on the basis of personal opinions of EP's principals. Aspen apparently believes the Court should punish EP because Aspen does not like one of EP's principals. The Court's equitable discretion is not subject to personal whims of the litigants but instead should be based solely on the relevant facts of the case. The facts relevant to this motion are that Aspen has successfully argued to three separate district courts that it is present in the Southern District of Texas, in order to get Rule B attachments against it vacated. When confronted with the fact that EP is also present in the Southern District of Texas and seeks vacatur of the attachments against EP on the same grounds on which Aspen has been successful, Aspen takes a 180 degree turn and argues that the facts that were relevant when it was seeking vacatur do not matter much anymore. To the contrary, the same facts that this Court considered in vacating the attachments against Aspen apply to the attachments Aspen has obtained. The sound exercise of this Court's discretion therefore compels a finding that Aspen's attachments should be vacated and the funds released.

## CONCLUSION

For the foregoing reasons, Aspen's arguments that its attachments should remain despite the presence of both parties in the Southern District of Texas flies in the face of this Court's decision in the related PSL case to vacate all attachments. Aspen now seeks to disregard the precise arguments that it successfully used to its benefit and to deny EP the same protections that it has obtained. Such dubious tactics are precisely what the doctrine of judicial estoppel seeks to preclude. Accepting Aspen's arguments would

confer upon Aspen unfair advantage that the Court should not sanction. Accordingly, EP's motion to vacate the attachments should be granted.

Respectfully submitted,

Dated: New York, New York
      May 21, 2008

HILL RIVKINS & HAYDEN LLP
Attorneys for Defendant, E.P. Team, Inc.

By: _____
John J. Sullivan
45 Broadway, Suite 1500
New York, New York 10006
(212) 669-0600